Kevin Gerard O'Grady
Law Office of Kevin O'Grady, LLC
1164 Bishop Street, Suite 1605
Honolulu, Hawaii 96813
(808) 521-3367
Hawaii Bar No. 8817
Kevin@KevinOGradyLaw.Com

Alan Alexander Beck
Law Office of Alan Beck
2692 Harcourt Drive
San Diego, CA  92123
(619) 905-9105
Hawaii Bar No. 9145
Alan.alexander.beck@gmail.com

Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JOHNATHON SOLINSKY, HAWAII RIFLE ASSOCIATION, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) ) |
| ANNE E. LOPEZ, in  her official capacity as Attorney General of the State of Hawaii, | ) ) ) ) |
| Defendant | ) ) ) ) ) ) ) |

Civil Action No. _____
VERIFIED COMPLAINT

## <u>VERIFIED COMPLAINT</u>
## <u>FOR DECLARATORY AND INJUNCTIVE RELIEF</u>

COMES NOW the Plaintiffs, Johnathan Solinsky and Hawaii Rifle Association (hereinafter "Plaintiffs"), by and through their undersigned counsel, and complains of the Defendants as follows:

### I.      Introduction

1.      The question presented by this case is whether the State of Hawaii can prohibit otherwise qualified nonresidents from carrying firearms by denying them concealed carry permits which are the only means to carry a firearm for self-defense in Hawaii;

2.      Accordingly, Plaintiffs bring this challenge to H.R.S. §134-9(a)(5) both as applied to themselves and facially;

### II.    <u>PARTIES</u>

3.      Plaintiff Johnathan Solinsky, (hereinafter "Solinsky"), is an adult male resident of the State of Virginia, resides in the County of Stafford, and is a citizen of the United States and a member of the Hawaii Rifle Association;

4.      Plaintiff Hawaii Rifle Association (hereinafter "HRA") is a 501(c)(7) non-profit organization dedicated to defending Hawaiians' Second Amendment rights. It has members who live outside of the state of Hawaii, and thus are not "residents" of the state of Hawaii, who would apply for concealed carry permits if

Hawaii law allowed for nonresident concealed carry permit applicants to be granted concealed carry permits;

5.    Defendant Anne E. Lopez is the Attorney General of the State of Hawaii and is sued in her official capacity and is responsible for enforcing the State of Hawaii's customs, policies, practices and laws related to the State of Hawaii on the acquisition, sale, purchase, ownership and possession of firearms and ammunition and criminal laws including those related to the acquisition, sale, purchase, ownership and possession of firearms and ammunition. Defendant Lopez may be served at the Office of Attorney General located at 425 Queen St, Honolulu, Hawaii 96813;

### III.    JURISDICTION AND VENUE

6.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343, 2201, 2202 and 42 U.S.C. § 1983 and § 1988;

7.    Venue lies in this Court pursuant to 28 U.S.C. § 1391;

### IV.    STATEMENT OF FACTS

8.    The Second Amendment to the United States Constitution provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms shall not be infringed.";

9.    The Second Amendment guarantees individuals a fundamental right to keep and carry arms for self-defense and defense of others in the event of a violent

confrontation. *District of Columbia v. Heller*, 554 U.S. 570 (2008); *McDonald v. Chicago*, 561 U.S. 742 (2010); *Caetano v. Massachusetts*, 577 U.S. 1027 (2016);

10.     The Supreme Court in *New York State Rifle & Pistol Ass'n v. Bruen* found "the standard for applying the Second Amendment is as follows: When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command." *Bruen,* 597 U.S. at 24, 142 S.Ct. 2111 (citation omitted);

11.     Hawaii state law requires that a person obtain a concealed carry permit in order to carry a firearm. *See* H.R.S. §134-9;

12.     In relevant part, H.R.S. §134-9 reads as follows;

§134-9 Licenses to carry. (a) The chief of police of a county shall grant a license to an applicant to carry a pistol or revolver and ammunition concealed on the licensee's person within the State, if the applicant:

(1) Satisfies each of the criteria established by or pursuant to subsection (d);

(2) Is not prohibited under section 134-7 from the ownership, possession, or control of a firearm and ammunition;

(3) Is not found to be lacking the essential character or temperament

necessary to be entrusted with a firearm as set forth in subsection (h);

(4) Is a citizen, national, or lawful permanent resident of the United States or

a duly accredited official representative of a foreign nation;

(5) **Is a resident of the State**; and

(6) Is of the age of twenty-one years or more. (Emphasis added)[1];

---

[1] Hawaii has a comprehensive statutory scheme regarding the acquisition, possession, ownership, use and carriage of arms including firearms. *See* Exhibit 1 HRS §134-1 *et seq*. The state's statutory framework allows political subdivision counties to add additional layers of bureaucracy and laws designed to frustrate the exercise of Second Amendment rights and the entire scheme is put toward abusive ends. This is because the state is diametrically opposed to the United States Constitution's Second Amendment and the right to keep and bear arms therein. *See* Exhibit 2 Attorney General Testimony re legislation in response to *Bruen*. HRS §134, *et seq*, and specifically §134-9, pertaining to the carriage of arms both concealed and unconcealed (open), provides that carrying a firearm unconcealed, "openly", falls under §134-9(b) and therein (1), *et seq*, which provides that an applicant seeking to carry unconcealed must convince the police chief of "the urgency or need to carry a firearm unconcealed", and "Is engaged in the protection of life and property", and in addition to meeting other criteria, "Is not found to be lacking the essential character or temperament necessary to be entrusted with a firearm as set forth in subsection (h)". In pre-*Bruen* analysis, the State of Hawaii Attorney General, in evaluating unconcealed carry, noted that §134-9 does not, on its face, limit unconcealed carry licenses to "security guards" but opined regarding what other unique and limited situations might qualify for an unconcealed carry license, including such examples as "(a)A person who has suffered *serious domestic abuse* from a former partner who has violated previous protective orders; (b) A victim of stalking who has received *credible* threats of death or serious bodily harm from his or her stalker; (c) A political activist who has received *credible* threats of death or serious bodily harm due to his or her political activity; (d) A witness to a crime who has received *credible* threats, or is testifying against an organization known to use violence to intimidate witnesses; (e) A person who faces heightened risk of attack or violence due to his or her profession, such as a private security officer, a psychiatrist or physician with an obsessive or threatening patient, an attorney with a former client or opposing party who has made *credible*

13.    Mr. Solinsky satisfies each of the criteria above other than the

residency requirement;

14.    Mr. Solinsky is a resident of the state of Virginia[2];

---

threats of death or serious bodily harm, a business owner with a violent former employee who has made credible threats of death or serious bodily harm,…". (Emphasis added).  These extremely limited and unique circumstances are further subject to the discretion of the police chief and are thus "may issue" and do not provide the general populace a way to carry a firearm to exercise second Amendment rights in case an unforeseen confrontation occurs.  Most, if not all, of the examples the AG provided involve specific preexisting events, not a general desire for protection regarding unforeseen confrontation.  See Attorney General Opinion 18-1, available at https://ag.hawaii.gov/publications/ag-opinions/2010-2019-ag-opinions/, last accessed on February 15, 2026.  Accordingly, open or unconcealed carry is not a viable option for the majority of the population and is not an issue.  Curiously, with regard to an unconcealed license, while it is limited to the county where the license is issued, the issuance is not limited to residents of the state or county.  *See* HRS § 134-(b) 1-7.

[2] Plaintiffs note that neither HRS §134-1 nor HRS §134-9 define "resident" as it pertains to the issuance of a CCL (Concealed Carry License).  *See Citizens for Equitable and Responsible Government v. County of Hawaii*, 108 Hawaii 318, 120 P.3d 217 (2005) at 323, "In this regard, a common  definition of "resident" is [a]ny person who occupies a dwelling within the State, has a *present intent to remain within the State for a period of time, and manifests the genuineness of that intent* by establishing an *ongoing* physical presence within the State together with indicia that his presence within the State is *something other than merely transitory in nature. Black's Law Dictionary* 1309 (6th ed.1990) (Emphasis added). *See In re Irving,* 13 Haw. 22, 24 (1900) ("[T]he primary significance of the word 'residence' as used in the constitution is the same as domicil[e]—a word which means the place where a man establishes his abode, makes the seat of his property, and exercises his civil and political rights." (Quoting *Chase v. Miller,* 41 Pa. 403, 420 (Pa.1862))). This definition of "resident" would exclude any person who did not exhibit a present intent to remain within Hawaii County for more than a transitory period."  Plaintiffs are "travellers", *i.e.*, "non-residents", who would only be in Hawaii for a "transitory period".  Plaintiffs do not vote in Hawaii and are not otherwise "residents".

15.    Mr. Solinsky is a U.S. citizen;

16.    Mr. Solinsky is over 21 years old (33 years old);

17.    Mr. Solinsky has never committed a crime which prohibits him from firearm ownership under either federal law or Hawaii law;

18.    Mr. Solinsky does not suffer from any mental illness which would disqualify him from firearm ownership under Hawaii or federal law;

19.    Mr. Solinsky has never been involuntarily committed to a mental health institution;

20.    Mr. Solinsky does not take illegal drugs or abuse alcohol;

21.    Mr. Solinsky has read the federal, state, and county laws governing the permissible use of firearms and associated requirements as required by H.R.S. §134-9(A);

22.    Mr. Solinsky has completed the training requirement as required by H.R.S. §134-9(e)[3];

---

[3] Plaintiffs do not concede that any permit, pre-approval or license or permission is necessary for the exercise of any aspect of Second Amendment rights.  Plaintiffs note that under HRS §134-9, unconcealed (or "open") carry is very restrictive and is not "shall-issue", but is instead subject to discretionary law enforcement officer approval.  Thus, for the vast majority of individuals, the only real way to carry outside the home for protection and the exercise of Second Amendment rights generally, is through the issuance of a CCL to carry concealed.  The statutory framework related to that is geared to be abusive and to frustrate Second Amendment rights.  Plaintiffs note that unconcealed carry is very limited to

23.    Mr. Solinsky has registered the firearm he wishes to carry with the Honolulu Police Department. *See* Exhibit 3.

24.    Mr. Solinsky is a member of the Hawaii Rifle Association;

25.    Mr. Solinsky has obtained a certification from his firearms instructor in compliance with H.R.S. §134-9(f) which he submitted with this concealed carry permit application. *See* Exhibit 4 Training Certification;

26.    On September 5, 2025, Mr. Solinsky applied for a concealed carry

---

specific circumstances and subject to police discretion and is "may issue".  Yet, the CCL statutory framework is engineered to be as abusive, frustrating, expensive and as Second-Amendment-limiting as possible.  Even the Attorney General, who supports legislation designed to be abusive, *See* Exhibit 2 herein, even recognized that "Following *Bruen*, the chiefs of police may not constitutionally restrict both concealed and unconcealed (open) carry licenses only to those who demonstrate a "special need."  See AG Opinion 22-02, *See* infra FN 1 for website.  The AG also stated "("[I]n the century leading up to the Second Amendment and in the first decade after its adoption, there is no historical basis for concluding that the pre-existing right enshrined in the Second Amendment permitted broad prohibitions on *all* forms of public carry." (emphasis added)); *id.* at 46 ("[I]t was considered beyond the constitutional pale in antebellum America to altogether prohibit public carry."). **This leaves states with discretion to place good cause restrictions on one form of carry, where similar restrictions are not placed on the other form of carry.**" (Emphasis added).   The State has taken this advice to mean that unconcealed carry may be "may issue", but that the state is free to use everything else just short of saying "may issue" to frustrate the exercise of the only other means of carry, for the vast majority of the populace, concealed.  That is absolutely wrong under *Bruen*.  In *this* lawsuit, Plaintiffs do not currently attack the general statutory framework associated with the issuance of CCL.

permit with the Honolulu Police Department;

27.    On February 3, 2026, Mr. Solinsky received a denial letter which stated "State law prohibits the HPD from issuing a License to Carry to a nonresident. Specifically, Hawai'i Revised Statutes (HRS) Section 134-9 requires an applicant for a License to Carry to be a Hawaii's resident. At present you meet all statutory and regulatory requirements for a License to Carry a concealed firearm with the exception of the residency requirement. Because you are not a Hawai'i resident, however, the HPD is required to deny your application on that basis." *See* Exhibit 5 Denial Letter;

28.    Mr. Solinsky previously served in the United States Marine Corps as an infantryman and sniper;

29.    Mr. Solinsky served a total of 8 years active duty in the Marine Corps;

30.    Mr. Solinsky served at Marine Corps Base Hawaii (MCBH), formerly known as Marine Corps Air Station Kaneohe Bay between 2011-2016;

31.    Mr. Solinsky is currently employed as a third-party contractor senior shooting instructor on contract with the Diplomatic Security Service of the U.S. State Department;

32.    Mr. Solinsky has been a firearms instructor for the past ten years including while in the military;

33.    Due to his military and civilian firearms training, Mr. Solinsky has

extensive training with firearms and is better trained with firearm than the vast

majority of the population;

34.    Due to his ties to Hawaii, Mr. Solinsky visits Hawaii;

35.    While in Hawaii, he would like to be able to carry a firearm to defend

himself;

36.    Obtaining a concealed carry permit through H.R.S. §134-9 is the only

means for Mr. Solinsky to obtain the ability to carry a firearm to defend himself,

*See* FN 1 *infra*;

37.    Mr. Solinsky's Second Amendment rights are being violated by

H.R.S. §134-9(a)(5) because historically Americans had a right to carry firearms

when visiting other states[4];

38.    The rights of similarly situated H.R.A. members are also being

violated by H.R.S. §134-9(a)(5);

39.    HRA has over 815 members and supporters in Hawaii including

members in other states. HRA brings this action on behalf of itself, its members,

supporters who possess all the indicia of membership, and similarly situated

---

[4] Plaintiffs note it is not Plaintiffs' burden to prove a well-established historical tradition of non-resident travellers being able to carry weapons, even multiple weapons, on one's person during travel for self-defense and the exercise of Second Amendment rights.  It just so happens that there is a vast wealth of law proving a well-established and enduring tradition of just that.  More importantly, however is the fact that Defendants cannot prove a well-established tradition to the contrary allowing any restriction vis a vis non-resident travellers.

members of the public. Many of HRA's individual Hawaii members have

connections to Hawaii but now live on the mainland and return to Hawaii as

traveller non-residents and have been adversely and directly harmed and injured

by Defendant's enforcement of the statutory prohibition on the issuance of CCL

to non-residents.  Indeed, the challenged statutes referenced herein have denied,

and will continue to deny, responsible, peaceable, law-abiding adults who are

non-residents of Hawaii their fundamental, individual right to keep and bear arms

secured under the Second and Fourteenth Amendments of the U.S. Constitution.

Defendant's actions and failures alleged herein have caused HRA to dedicate

resources that would otherwise be available for other purposes to protect the

rights and property of its members, supporters, and the general public, including

by and through this action;

## <u>V</u>
### <u>COUNT I</u>
### U.S. CONST., AMEND. II As Made Applicable to the States by U.S. CONST., AMEND. XIII

40.    Plaintiffs repeat and reallege the allegations of the Paragraphs above,

as if set forth verbatim herein;

41.    The Second Amendment to the United States Constitution states, in

pertinent part, that "the right of the people to keep and bear arms, shall not be

infringed." The Second Amendment further "elevates above all other interests the

right of law-abiding, responsible citizens to use arms in defense of hearth and home." *District of Columbia v. Heller*, 554 U.S. 570, 635 (2008);

42.    As the Court subsequently held in *McDonald v. City of Chicago*, 561 U.S. 742, 130 S.Ct. 3020 (2010): "it is clear that the Framers and ratifiers of the Fourteenth Amendment counted the right to keep and bear arms among those fundamental rights necessary to our system of ordered liberty." 130 S.Ct. at 3043;

43.    The Supreme Court in *New York State Rifle & Pistol Ass'n, v. Bruen*, 597 U.S. 1 (2022) holds that restrictions on Second Amendment rights must be justified through the use of historical laws that similarly restricted firearms usage;

44.    Pursuant to circuit precedent a law that "restricts [the] ability to bear or keep [a] firearm … unquestionably implicates … Second Amendment rights." *United States v. Perez-Garcia*, 96 F.4th 1166, 1181 (9th Cir. 2024);

45.    H.R.S. §134-9(a)(5) completely prohibits Mr. Solinsky from carrying/bearing a firearm for self-defense[5];

46.    Pursuant to circuit precedent, the plain text of the Second Amendment is implicated by H.R.S. §134-9(a)(5) as applied to Mr. Solinsky and other nonresidents;

47.    Therefore, the burden is on the government to justify H.R.S. §134-9(a)(5) by affirmatively proving a comparable national historical tradition of

---

[5] *See* FN 1 Infra.

firearms carry;

48.    Hawaii will not be able to do that because historically out of state travelers, "non residents", had a right to carry firearms for self-defense and often times received more firearms rights than residents who were not traveling;

49.    This is demonstrated through an extensive volume of historical laws;

50.    In 1686, the Province of East Jersey prohibited "privately" wearing various weapons but exempted "all strangers, travelling upon their lawful occasions thro' this Province, behaving themselves peaceably." *See* Exhibit *6*. An Act Against Wearing Swords, ch. 9, N.J. STAT. (W. Bradford 1881) (Law Passed 1686). Available at https://firearmslaw.duke.edu/laws/the-grants-concessions-and-original-constitutions-of-the-province-of-new-jersey-page-289-290-image-293-294-1881-available-at-the-making-of-modern-law-primary-sources ;

51.    An 1813 Kentucky law was perhaps the earliest post-founding example, prohibiting the concealed carry of certain weapons "unless when travelling on a journey." *See* Exhibit 7.  1813 Ky. Acts 100, An Act to Prevent Persons in this Commonwealth from Wearing Concealed Arms, Except in Certain Cases, ch. 89, § 1. Available at https://firearmslaw.duke.edu/laws/1813-ky-acts-100-an-act-to-prevent-persons-in-this-commonwealth-from-wearing-concealed-

arms-except-in-certain-cases-ch-89-c2a7-1 ;[6]

52.     An 1820 Indiana law was similar, limiting its concealed carry ban by stating it "shall not be so construed as to affect travellers." *See* Exhibit 8. 1819 Ind. Acts 39, An Act to Prohibit the Wearing of Concealed Weapons. Available at https://firearmslaw.duke.edu/laws/1819-ind-acts-39-an-act-to-prohibit-the-wearing-of-concealed-weapons;

53.     During the Antebellum Era Tennessee also banned concealed carry but provided express exceptions for travelers. See 1821 Tenn. Pub. Acts 1516, An Act to Prevent the Wearing of Dangerous and Unlawful Weapons, ch. 13 ("[N]othing herein contained shall affect … any person that may be on a journey to any place out of his county or state."). *See* Exhibit 9. Available at https://firearmslaw.duke.edu/laws/robert-looney-caruthers-a-compilation-of-the-

---

[6] Plaintiffs allege that at the time of the founding, circa 1791, the ratification of the Second Amendment, first, there was a robust tradition of carrying arms, including carrying multiple firearms on one's person, for possible confrontation, while travelling by non-residents.  Plaintiffs further allege that second, circa 1791, there was no well-established tradition of restricting or barring "non-residents" or travellers, from carrying arms.  Plaintiffs further allege, third, circa 1791, that there was no well-established tradition of forcing "travellers" or "non-residents" to obtain permit, license, or pre-travel permission to carry arms while travelling. Plaintiffs further allege, fourth, that any laws, ordinances, rules, regulations etc, cited herein by Plaintiffs, that are after 1791, are proof that, at the founding, there was no well-established tradition of restricting or barring travellers or non-residents from carrying arms and that the post-1791 laws are proof, under *Bruen*, that post 1791 laws reinforce the understanding at 1791 and cannot and do not deviate or lessen the understanding of the Second Amendment in 1791 at the time of the founding.

statutes-of-tennessee-of-a-general-and-permanent-nature-from-the-
commencement-of-the-government-to-the-present-time-with-references-to-
judicial-decisio ;

54.     During the Antebellum Era, Arkansas also banned concealed carry but
provided express exceptions for travelers. *See* Exhibit 10. REVISED STATUTES
OF THE STATE OF ARKANSAS, ADOPTED AT THE OCTOBER SESSION
OF THE GENERAL ASSEMBLY OF SAID STATE, A.D. 1837, at 280 (1838)
(1837 law applying to every person "unless upon a journey") available at
https://firearmslaw.duke.edu/laws/revised-statutes-of-the-state-of-arkansas-
adopted-at-the-october-session-of-the-general-assembly-of-said-state-a-d-1837-
in-the-year-of-our-independence-the-sixty-second-and-of-the-state-of-second ;

55.     During the Antebellum Era Alabama also banned concealed carry but
provided express exceptions for travelers. 1841 Ala. Laws 149 (prohibiting
concealed carry "unless such person shall … be travelling, or setting out on a
journey"). *See* Exhibit 11, Available at https://firearmslaw.duke.edu/laws/1841-
ala-acts-148-49-of-miscellaneous-offences-ch-7-c2a7-4 ;

56.     An 1867 Nevada law barred concealed carry for everyone who was
not a "peace officer or traveler." 1867 Nev. Stat. 66. *See* Exhibit 12. Available at
https://firearmslaw.duke.edu/laws/an-act-to-prohibit-carrying-of-concealed-
weapons-ch-30-1-2-1867-nev-stat-special-sess-joseph-e-eckley ;

57.    An 1864 California law barred concealed carry for everyone who was not a "peace officer or traveler." *See* Exhibit 13. The Statutes of California Passed at the Fourteenth Session of the Legislature, 1863: Begun on Monday, the Fifth Day of January, and Ended on Monday, the Twenty-Seventh Day of April (Sacramento, CA: Benj. P. Avery, 1863), 748. Chapter 485—An Act to Prohibit the Carrying of Concealed Weapons, §§ 1–2. Approved April 27, 1863. Available at https://firearmslaw.duke.edu/laws/an-act-to-prohibit-the-carrying-of-concealed-weapons-ch-485-1-2-1863-cal-stat-748-748-benj-p-avery ;

58.    In 1871, Texas instituted a fine for anyone caught "carry[ing] on or about his person, saddle, or in his saddle-bags, any pistol, dirk, dagger, slung-shot, sword-cane, spear, brass-knuckles, bowie-knife, or any other kind of knife manufactured or sold for purposes of offense or defense," providing, however, that "[t]he preceding article shall not apply … to persons traveling." *See* Exhibit 14. The Revised Statutes of Texas, 4243 (1879). Available at https://firearmslaw.duke.edu/laws/george-washington-paschal-a-digest-of-the-laws-of-texas-containing-laws-in-force-and-the-repealed-laws-on-which-rights-rest-carefully-annotated-page-1322-1324-image-292-294-vol-2-1873-availa ;

59.    In the 1880s, the Arizona Territory banned the carry "pistol[e]" "within any settlement, town, village or city within this Territory" but exempted "traveling." *See* Exhibit 15.  1883 Ariz. Sess. Laws 21–22 available at

https://firearmslaw.duke.edu/laws/act-of-mar-18-1889-1889-ariz-sess-laws-16-17;

60.    In 1887, the New Mexico Territory banned all carry of deadly weapons except that "[p]ersons traveling may carry arms for their own protection while actually prosecuting their journey and may pass through settlements on their road without disarming." *See* Exhibit 16. 1887 Acts of the Legislative Assembly, of the Territory of New Mexico, Twenty-Seventh Session: Convened at the Capitol, at the City of Santa Fe, on Monday, the 27th Day of December, 1886, and Adjourned on Thursday, the 24th Day of February, 1887 (Las Vegas, NM: J. A. Carruth, 1887), 55–58. Chapter 30—An Act to Prohibit the Unlawful Carrying and Use of Deadly Weapons, §§ 1–15. Approved February 18, 1887. Available at https://firearmslaw.duke.edu/laws/an-act-to-prohibit-the-unlawful-carrying-and-use-of-deadly-weapons-feb-18-1887-reprinted-in-acts-of-the-legislative-assembly-of-the-territory-of-new-mexico-twenty-seventh-session-55-58-1887 ;

61.    A Mississippi law stated  "Any person, not being threatened with, or having good and sufficient reason to apprehend an attack, or travelling (not being a tramp) or setting out on a journey, or a peace officer, or deputy in discharge of his duties, who carries concealed, in whole or in part, any bowie knife, pistol, brass or metallic knuckles, slung-shot, or other deadly weapon of like kind or description, shall be deemed guilty of a misdemeanor." *See* Exhibit 17.  An Act to

Prevent the Carrying of Concealed Weapons, and for Other Purposes, ch. 46, §§ 1–7, 1878 Miss. Laws 175, 175–76 (Power & Barksdale). Available at https://firearmslaw.duke.edu/laws/an-act-to-prevent-the-carrying-of-concealed-weapons-and-for-other-purposes-ch-46-1-7-1878-miss-laws-175-175-76-power-barksdale ;

62.     Similarly, Oklahoma had a law which prohibited carrying shot-guns or rifles unless one "hunting, having them repaired, or for killing animals, or for the purpose of using the same in public muster or military drills, or *while travelling* or removing from one place to another, and not otherwise." *See* Exhibit 18.  Concealed Weapons, ch. 25, art. 47, §§ 1–10, 1890 Okla. Territory Sess. Laws 495, 495–96 (State Capital Printing Co. 1891) (Law Passed 1890). Available at https://firearmslaw.duke.edu/laws/leander-g-pitman-the-statutes-of-oklahoma-1890-from-the-laws-passed-by-the-first-legislative-assembly-of-the-territory-page-496-image-512-guthrie-1891-available-at-the-making-of-modern-law-pr ;

63.     The State of Missouri had a ban on the concealed carry of danger or deadly weapons but had an express exemption for "persons moving or traveling peaceably through this state." *See* Exhibit 19.  MO. REV. STAT., ch. 24, art. 2, §§ 1274-1278 (Carter & Regan 1879). https://firearmslaw.duke.edu/laws/mo-rev-stat-ch-24-art-2-1274-1278-carter-regan-1879 ;

64.     Similarly, Tennessee had a law which was in force in 1878 which made it a crime to give a minor a pistol but had an exemption for travelers. "This section makes it a misdemeanor to sell, give, or loan a minor a pistol, or other dangerous weapon, except a gun for hunting, or weapon for defense in traveling." *State v. Callicutt*, 69 Tenn. 714, 714 (1878). Seymour Dwight Thompson, A Compilation of the Statute Laws of the State of Tennessee, of a General and Permanent Nature, Compiled on the Basis of the Code of Tennessee, With Notes and References, Including Acts of Session of 1870-'71 Page 125, Image 794 (Vol. 2, 1873) available at The Making of Modern Law: Primary Sources. https://firearmslaw.duke.edu/laws/seymour-dwight-thompson-a-compilation-of-the-statute-laws-of-the-state-of-tennessee-of-a-general-and-permanent-nature-compiled-on-the-basis-of-the-code-of-tennessee-with-notes-and-references-incl-2 , attached as Exhibit 20;

65.     Alabama had a law which prohibited the carry of concealed weapons including firearm with an exemption for those "traveling, or setting out on a journey." *See* Exhibit 21. Wade Keyes, The Code of Alabama, 1876 : with References to the Decisions of the Supreme Court of the State upon the Construction of the Statutes; and in Which the General and Permanent Acts of the Session of 1876-7 have been Incorporated Page 882, Image 898 (1877) available at The Making of Modern Law: Primary Sources.

https://firearmslaw.duke.edu/laws/wade-keyes-the-code-of-alabama-1876-with-references-to-the-decisions-of-the-supreme-court-of-the-state-upon-the-construction-of-the-statutes-and-in-which-the-general-and-permanent-acts-of-the-ses ;

66.    In 1899, Wyoming prohibited every person "not being a traveler" from carrying concealed pistols and other deadly weapons. *See* Exhibit 22. Josiah A. Van Orsdel, Attorney General, Revised Statutes of Wyoming, in Force December 1, 1899 Including the Magna Charta, Declaration of Independence, Articles of Confederation, Organic Act of Territory of Wyoming, Act of Admission of the State of Wyoming, Constitution of the United States and of Wyoming, and the Rules of the Supreme Court Page 1253, Image 1253 (1899) available at The Making of Modern Law: Primary Sources.

https://firearmslaw.duke.edu/laws/josiah-a-van-orsdel-attorney-general-revised-statutes-of-wyoming-in-force-december-1-1899-including-the-magna-charta-declaration-of-independence-articles-of-confederation-organic-act-of-territ-2 ;

67.    In 1820, Indiana passed a law that said "any person wearing any dirk, pistol, sword in cane, or any other unlawful weapon, concealed, shall be deemed guilty of a misdemeanor…Provided however, that this act shall not be so construed as to affect travellers." *See* Exhibit 23.  An Act to Prohibit the Wearing of Concealed Weapons, ch. 23, § 1, 1820 Ind. Acts 39, 39 (Isaac Cox).

https://firearmslaw.duke.edu/laws/1819-ind-acts-39-an-act-to-prohibit-the-wearing-of-concealed-weapons ;

68.    In 1831, Indiana passed a law that said "every person, not being a traveller, who shall wear or carry a dirk, pistol, sword in a cane, or other dangerous weapon concealed" was guilty of a crime. *See* Exhibit 24.  An Act Relative to Crime and Punishment, ch. 26, § 58, 1831 Ind. Acts 180, 192 (Douglas & Maguire). https://firearmslaw.duke.edu/laws/1831-ind-acts-192-c2a7-58 ;

69.    In 1859 Indiana passed a law that said "[e]very person, not being a traveler, who shall wear or carry any dirk, pistol, bowie-knife, dagger, sword-in-cane, or any other dangerous or deadly weapon concealed" was guilty of a crime. *See* Exhibit 25. 1859 Ind. Acts 129, An Act to Prevent Carrying Concealed or Dangerous Weapons, and to Provide Punishment Therefor.

https://firearmslaw.duke.edu/laws/an-act-to-prevent-carrying-concealed-or-dangerous-weapons-and-to-provide-punishment-therefor-ch-78-1-1859-ind-acts-129-129-john-c-walker ;

70.    In 1881, Indiana passed a virtually identical law as the one above that said "[e]very person, not being a traveler, who shall wear or carry any dirk, pistol, bowie-knife, dagger, sword-in-cane, or any other dangerous or deadly weapon concealed" was guilty of a crime. *See* Exhibit 26.  Revised Statutes of Indiana:

Containing, Also, the United States and Indiana Constitutions and an Appendix of

Historical Documents Page 371-372, Image 393-394 (Vol. 1, 1881) available at

The Making of Modern Law: Primary Sources. Available at

https://firearmslaw.duke.edu/laws/james-s-frazer-commissioner-the-revised-statutes-of-indiana-containing-also-the-united-states-and-indiana-constitutions-and-an-appendix-of-historical-documents-page-371-372-image-393-394-vol ;

71.    Many cities and/or municipalities had similar traveler exemptions;

72.    The City of Oakland[7] had a traveler exemption. Fred L. Button, ed.,

General Municipal Ordinances of the City of Oakland, California (Oakland, CA;

Enquirer, 1895), p. 218, sec. 1, citing An Ordinance to Prohibit the Carrying of

Concealed Weapons, No. 1141 ("It shall be unlawful for any person in the City of

Oakland, not being a public officer or a traveler actually engaged in making a

journey, to wear or carry concealed about his person without a permit, as

hereinafter provided, any pistol.") *See* Exhibit 27.   Available at

https://firearmslaw.duke.edu/laws/fred-l-button-ed-general-municipal-ordinances-of-the-city-of-oakland-california-oakland-ca-enquirer-1895-p-218-sec-1-an-ordinance-to-prohibit-the-carrying-of-concealed-weapons-no-1141 ;

---

[7] Plaintiffs do not concede or attribute any more or less weight to cities or political subdivisions compared to states or colonies.  Under *Bruen*, it is the *government* that **always** bears the heavy burden to prove a well-established and enduring national tradition, at the founding, of a law that in some way touches upon keeping and or bearing arms that is relevantly similar in the how and why of the law.

73.     Sacramento had a traveler exemption law.  *See* Exhibit 28. Ordinance

no. 84, Charter and Ordinances of the City of Sacramento, Prohibiting the

Carrying of Concealed Deadly Weapons (1876)  ("It shall be unlawful for any

person, not being a public officer or traveler, or not having a permit from the

Police Commissioners of the City of Sacramento, to wear or carry, concealed, any

pistol, dirk, or other dangerous or deadly weapon."). Available at

https://firearmslaw.duke.edu/laws/prohibiting-the-carrying-of-concealed-deadly-

weapons-ordinance-no-84-charter-and-ordinances-of-the-city-of-sacramento-1876

;

74.     Los Angeles similarly banned all carry of certain "dangerous and

deadly" weapons in 1878, unless carried by "persons actually traveling." *See*

Exhibit 29. Revised Charter and Compiled Ordinances and Resolutions of the

City of Los Angeles 83 (Wm. M. Caswell ed., 1878). Available at

https://firearmslaw.duke.edu/laws/ordinance-no-8-los-angeles-daily-herald-apr-

12-1889-at-7-los-angeles-california ;

75.     Fresno had a similar law. "Any person excepting peace officers and

travelers, who shall carry concealed upon his person any pistol or firearm,

slungshot, dirk or bowie-knife, or other deadly weapon, without a written

permission (revocable at any time) from the president of the board of trustees, is

guilty of a misdemeanor." *See* Exhibit 30. L. W. Moultrie, Charter and

Ordinances of the City of Fresno Page 30, Image 28 (1896) Available at

https://firearmslaw.duke.edu/laws/l-w-moultrie-charter-and-ordinances-of-the-city-of-fresno-page-30-image-28-1896-available-at-the-making-of-modern-law-primary-sources ;

76.    Fresno had another similar law passed in 1885. *See* Exhibit 31.

"Ordinance No. 6" The Fresno Weekly Republican, November 7, 1885, p. 3.

Volume 10, Number 9. Available at https://firearmslaw.duke.edu/wp-content/uploads/2023/08/1885-The-Fresno-Republican-1.pdf ;

77.    Marysville had a similar ordinance. "It shall be unlawful for any person, not being a public officer or traveler, or not having a written permit from the Marshal of the city of Marysville, to wear or carry concealed, or otherwise, within the limits of the city of Marysville, any pistol, dirk, or other dangerous or deadly weapon." *See* Exhibit 32. "An Ordinance to Prohibit the Carrying of Concealed Deadly Weapons." Marysville Daily Democrat, February 7, 1889, p. 4. Volume 9, Number 85. (Marysville, CA). Available at

https://firearmslaw.duke.edu/laws/an-ordinance-to-prohibit-the-carrying-of-concealed-deadly-weapons-marysville-daily-democrat-feb-7-1889-at-4 ;

78.    In 1888 the town of Lompoc had an ordinance that banned concealed pistol carry. "It shall be unlawful for any person not being a public officer or traveler, or not having a written permit from the President of the Board of

Trustees of the Town of Lompoc, to wear or carry concealed, within the corporate limits of the Town of Lompoc, any pistol. See Ordinance No. 10: An Ordinance Prohibiting the Carrying of Concealed Deadly Weapons, and Fixing the Penalty Therefor." The Lompoc Record, August 21, 1888, p. 2. Number 23; Volume 14. *See* Exhibit 33. https://firearmslaw.duke.edu/laws/an-ordinance-prohibiting-the-carrying-of-concealed-deadly-weapons-and-fixing-the-penalty-therefor-no-10-the-lompoc-record-aug-25-1888-at-2 ;

79.    San Diego had a similar traveler exemption in their concealed carry ordinance. "It shall be unlawful for any person not being a peace officer or traveler, not having a permit from the President of the Board of Trustees of said city to wear or carry concealed about his person, within the limits of said city, any pistol…" *See* Exhibit 34. City of San Diego, Digital Archives, Ordinance Number 19—An Ordinance for the Prevention of Offenses Against the Peace, Good Order and Health of the City of San Diego, §§ 2, 3, 39, & 41. Ordinances 1 - 50 (June 14, 1886 - January 24, 1887) in Ordinance Files 1850 - 1894, available at https://firearmslaw.duke.edu/laws/ordinance-no-19-2-3-39-41-board-of-trustees-of-the-city-of-san-diego-1886-san-diego-california ;

80.    Modesto had a similar traveler exemption in their concealed carry ordinance. It shall be unlawful for any person not being a public officer or traveler, not having a written permit from the President of the Board of Trustees

to wear or carry concealed about his person within the corporate limits of the City of Modesto any pistol." *See* Exhibit 35.  Ordinance no. 15—An Ordinance to Prohibit the Discharge of Fire Arms and the Carrying of Deadly or Concealed Weapons within the Corporate Limits of the City of Modesto, §§ 1-5. Modesto City Council Ordinances Passed from 1884 to 1899 (#1 - #185). Introduced September 19, 1884; Passed September 16, 1884; Published in the Modesto Herald October 2, 1884. Available at

https://www.modestogov.com/ArchiveCenter/ViewFile/Item/3958   and https://firearmslaw.duke.edu/laws/ordinance-no-15-1-5-board-of-trustees-of-the-city-of-modesto-1884-modesto-california ;

81.    San Francisco had a similar law. "It shall be unlawful for any person, not being a public officer or traveler, or not having a permit from the Police Commissioners of this city and county, to wear or carry concealed, in this city and county, any pistol, dirk or other dangerous or deadly weapon." *See* Exhibit 36. General Orders of the Board of Supervisors Providing Regulations for the Government of the City And County of San Francisco: Also, Ordinances of Park Commissioners (San Francisco: P.J. Thomas, 1884), 8. General Order no. 1,603—Relating to the Police Department, § 22—Prohibiting the Carrying of Concealed Deadly Weapons. Approved September 17, 1880. Available at

https://firearmslaw.duke.edu/laws/prohibiting-the-carrying-of-concealed-deadly-

weapons-c2a7-22-of-general-order-no-1603-relating-to-the-police-department-general-orders-of-the-board-of-supervisors-providing-regulations-f ;

82.　　Eureka had a similar law.  *See* Exhibit 37. "It shall be unlawful for any person not being a public officer, or traveler, or not having a permit from the Mayor of this city, to wear or carry concealed, within the corporate limits of this city, any pistol, dirk, or any other dangerous or deadly weapon." Charter and Revised Ordinances of the City of Eureka (Eureka, CA: Standard Print, 1905), 251. Penal Ordinances, Ordinance No. 55— Prohibiting the Carrying of Concealed Weapons, §§ 1-4. Approved November 6, 1878. Available at https://firearmslaw.duke.edu/laws/ordinance-no-55-prohibiting-the-carrying-of-concealed-weapons-c2a7c2a7-1-4-in-charter-and-revised-ordinances-of-the-city-of-eureka-1878 ;

83.　　In 1888, Dallas banned the carry of pistols with an exception for "persons traveling." *See* Exhibit 38.  Ordinances of the Council of the City of Dallas and Annual Reports of City Officers from October 1st, 1886 to June 25th, 1888 Page 80, Image 80 (1888) available at The Making of Modern Law: Primary Sources. https://firearmslaw.duke.edu/laws/ordinances-of-the-council-of-the-city-of-dallas-and-annual-reports-of-city-officers-from-october-1st-1886-to-june-25th-1888-page-80-image-80-1888-available-at-the-making-of-modern-law-primary-so ;

84.    In 1880, Austin banned the carry of pistols with an exception for "persons traveling." *See* Exhibit 39.  An Ordinance Prohibiting the Unlawful Carrying of Arms, DAILY DEMOCRATIC STATESMAN, May 29, 1880, at 4 (Austin, TX). https://firearmslaw.duke.edu/laws/an-ordinance-prohibiting-the-unlawful-carrying-of-arms ;

85.    In 1889, the town[8] of McKinney banned the carry of pistols with an exception for "persons traveling." *See* Exhibit 40. Revised Code of Ordinances of the City of Mckinney Page 13, Image 14 (1899) available at The Making of Modern Law: Primary Sources. Available at https://firearmslaw.duke.edu/laws/revised-code-of-ordinances-of-the-city-of-mckinney-page-13-image-14-1899-available-at-the-making-of-modern-law-primary-sources ;[9]

---

[8] Plaintiffs do not concede that late 19th century laws, or any laws after 1791, regarding prohibition of or licensure of carrying, arms, of a particular type or generally, concealed or unconcealed, proves or establishes a well-established tradition of anything.

[9] All of the citations herein after 1791 are a perfect example of an enduring well-established tradition that existed at and before 1791 at the founding.  That is, there was no well-established tradition, at the founding, of **any** restriction or bar of non-resident travellers from carrying weapons and exercising their Second Amendment rights.  To the contrary, non-resident travellers received extra protection.  Plaintiffs do not concede that just because these laws existed, if any were to be contrary to the tradition at the founding, that any of them, even if a substantial number, could change the meaning that existed at the founding.  Here, it just so happens that the well-established tradition, at the founding, of providing non-resident travellers, explicit extra Second Amendment protections, continued well into the 1800's and even into the 1900's.  Hawaii is an extreme lonely outlier.

86.    The town of Eufaula, Alabama had a ban on the concealed carry of pistols which had an express exemption for those traveling. *See* Exhibit 41. Penal Code, ch. 26, §§ 208, 222–223, 234–235, & 247, EUFAULA, ALABAMA, THE CODE OF ORDINANCES OF THE CITY (Alabama Baptist Print 1886).

https://firearmslaw.duke.edu/laws/penal-code-ch-26-208-222-223-234-235-247-eufaula-alabama-the-code-of-ordinances-of-the-city-alabama-baptist-print-1886 ;

87.    Woodland, California had a similar ordinance. It prevented carrying concealed, deadly or dangerous weapons, but exempted, "persons moving or traveling peaceably through this state." *See* Exhibit 42. WOODLAND, CALIFORNIA, THE CHARTER AND ORDINANCES OF THE CITY, pt. 3, Ordinance no. 66, §§ 1–4 (Lee & Warren's Job Printing Office 1893) (Law Passed 1886). https://firearmslaw.duke.edu/laws/woodland-california-the-charter-and-ordinances-of-the-city-pt-3-ordinance-no-66-1-4-lee-warrens-job-printing-office-1893-law-passed-1886 ;

88.    Columbia, MO banned the conceal carry of pistols and other deadly or dangerous weapons, but exempted "persons moving or traveling peaceably through the state". *See* Exhibit 43. Carrying Concealed Weapons—Firing Guns, Pistols, Fire Crackers, etc., Ch. 17, §§ 160-164 in General Ordinances of the

---

Specifically, the Hawaii (a)(5) resident prohibition language only appeared **post *Bruen***, and specifically in response to *Bruen* in SB1230.  SB1230 is also the subject of other attacks, *See Wolford v Lopez*, 24-1046, passim.

Town of Columbia. https://firearmslaw.duke.edu/laws/carrying-concealed-weapons-firing-guns-pistols-fire-crackers-etc-ch-17-c2a7c2a7-160-164-in-general-ordinances-of-the-town-of-columbia ;

89.      In 1879, Boise City, Idaho, banned the carry of pistols, but "unless such person be traveling or stepping out on a journey." *See* Exhibit 44, Charter and Revised Ordinances of Boise City, Idaho. In Effect April 12, 1894 Page 118-119, Image 119-120 (1894) available at The Making of Modern Law: Primary Sources. https://firearmslaw.duke.edu/laws/charter-and-revised-ordinances-of-boise-city-idaho-in-effect-april-12-1894-page-118-119-image-119-120-1894-available-at-the-making-of-modern-law-primary-sources ;

90.      In 1898, Blomfield, Illinois, prohibited concealed carry of dangerous or deadly weapons, but exempted, "persons moving or traveling through this state." Carrying Deadly Weapons, Discharging Fire-Arms, etc., Ch. 12, Art. 3, §§ 50-52, in The Revised Ordinances of the City of Bloomfield (1898). https://firearmslaw.duke.edu/laws/carrying-deadly-weapons-discharging-fire-arms-etc-ch-12-art-3-c2a7c2a7-50-52-in-the-revised-ordinances-of-the-city-of-bloomfield-1898 , attached as Exhibit 45;

91.      In 1881, Greenville, Mississippi had a ban on the concealed carry of pistols and some other weapons but had an exemption for those "traveling, or setting out on a journey." *See* Exhibit 46. Ordinance No. III: Crimes and

Misdemeanors, GREENVILLE TIMES, Dec. 31, 1881, at 2 (Greenville, Mississippi). Available at https://firearmslaw.duke.edu/laws/ordinance-no-iii-crimes-and-misdemeanors-greenville-times-dec-31-1881-at-2-greenville-mississippi ;

92.    In 1886, Pascagoula, Mississippi had a ban on the concealed carry of weapons but had an exemption for those "traveling on a journey." *See* Exhibit 47. "Board of Mayor and Aldermen." The Pascagoula Democrat-Star, April 30, 1886, p. 3. Volume 42; Number 9. Ordinance of April 23, 1886. Passed April 23, 1886. Available at https://firearmslaw.duke.edu/laws/ordinance-of-april-23-1886-the-pascagoula-democrat-star-apr-30-1886-at-3-pascagoula-mississippi ;

93.    In 1879, the City of Montgomery prohibited the concealed carry of pistols and other firearms but had an exemption for those "travelling or setting out on a journey." *See* Exhibit 48.  J. M. Falkner, The Code of Ordinances of the City Council of Montgomery, with the Charter Page 148-49, Image 148-49 (1879) available at The Making of Modern Law: Primary Sources. Available at https://firearmslaw.duke.edu/laws/j-m-falkner-the-code-of-ordinances-of-the-city-council-of-montgomery-with-the-charter-page-148-49-image-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-available-at-the-making-of-modern-law-primary-sources ;

94.    In 1871, Lebanon, Tennessee banned the concealed carry of pistols and other dangerous weapons but had an exemption for those "on a journey." *See*

Exhibit 49. Misdemeanors, ch. 20, §§ 19, 22–23, 27, LEBANON, TENNESSEE,

A COMPILATION OF THE LAWS AND ORDINANCES OF THE

CORPORATION (Wade & White 1871). Available at

https://firearmslaw.duke.edu/laws/misdemeanors-ch-20-19-22-23-27-lebanon-

tennessee-a-compilation-of-the-laws-and-ordinances-of-the-corporation-wade-

white-1871 ;

95.     In 1862, the City of Selma had a ban on the concealed carry of

firearms and some other weapons but had an exemption if one was "being upon or

about to start upon a journey." *See* Exhibit 50. SELMA, CODE OF THE CITY,

ch. 7, §§ 270 & 275 (Job and Book Office 1862). Available at

https://firearmslaw.duke.edu/laws/selma-code-of-the-city-ch-7-270-275-job-and-

book-office-1862 ;

96.     In 1897, De Queen, Arkansas had a complete ban on the carry of most

pistols and some other weapons "[p]rovided further that nothing in the ordinance

shall prohibit any person from carrying any weapon when upon a journey." *See*

Exhibit 51. "Weapons." De Queen Bee, December 24, 1897, p. 8. Volume 1;

Number 30. Weapons, §§ 1–2. Undated. Available at

https://firearmslaw.duke.edu/laws/weapons-1-2-de-queen-bee-dec-24-1897-at-8-

de-queen-arkansas ;

97.     In 1898, Ardmore, Oklahoma Territory had a complete ban on the

carry of most pistols and some other weapons "provided, further, that nothing in this ordinance be so construed as to prohibit any person from carrying a weapon when upon a journey." (Spelled "jorney" in original source document.). *See* Exhibit 52.  "City Ordinances." The Daily Ardmoreite, July 19, 1898, pp. 1 & 3. Volume 5; Number 224. Ordinance Number 9—Concealed Weapons, §§ 1-5. Approved July 18, 1898. Available at

https://firearmslaw.duke.edu/laws/ordinance-no-9-1-5-the-daily-ardmoreite-jul-19-1898-at-1-3-ardmore-oklahoma-territory ;

98.    In 1899, the Indian Territories banned the carry of most pistols and some other weapons [p]rovided, further that nothing in this act be so construed as to prohibit any person from carrying any weapon when upon a journey." *See* Exhibit 53. Dorset Carter, Annotated Statutes of the Indian Territory: Embracing All Laws of a General and Permanent Character in Force at the Close of the Second Session of the Fifty-fifth Congress Page 243-244, Image 327-328 (1899) available at The Making of Modern Law: Primary Sources. Available at

https://firearmslaw.duke.edu/laws/dorset-carter-annotated-statutes-of-the-indian-territory-embracing-all-laws-of-a-general-and-permanent-character-in-force-at-the-close-of-the-second-session-of-the-fifty-fifth-congress-page-243-244 ;

99.    In 1893, Macon, Mississippi banned the concealed carry of pistols and other deadly weapons but had an exemption for those "traveling (not being a

tramp) or setting out on a journey." *See* Exhibit 54. Ordinance no. 12, §§ 1–3,

MACON BEACON, Feb. 18, 1893, at 3 (Macon, Mississippi). Available at

https://firearmslaw.duke.edu/laws/ordinance-no-12-1-3-macon-beacon-feb-18-
1893-at-3-macon-mississippi ;

100.   In 1897, Mena, Arkansas banned the carry of most pistols and other

deadly weapons "[p]rovided further that nothing in this ordinance shall prohibit

any person from carrying any weapon when upon a journey." *See* Exhibit 55.

"Ordinance No. 90." The Mena Weekly Star, October 13, 1897, p. 4. Volume 11;

Number 9. Ordinance no. 90, §§ 1–3. Passed and approved October 8, 1897.

Available at https://firearmslaw.duke.edu/laws/ordinance-no-90-1-3-the-mena-
weekly-star-oct-13-1897-at-4-mena-arkansas ;

101.   In 1899, Green Forest, Arkansas banned the carry of most pistols and

other deadly weapons "[p]rovided further, nothing in this ordinance be so

construed as to prohibit any person from carrying any weapon when upon a

journey. *See* Exhibit 56. "Ordinance 21." The Green Forest Tribune, May 11,

1899, p. 1. Ordinance 21—An Ordinance making it a misdemeanor to carry

weapons within the corporate limits of Green Forest, prescribing penalty, §§ 1-6.

Approved May 3, 1899. Volume 10, Number 3. (Green Forest, Arkansas).

Available at https://firearmslaw.duke.edu/laws/ordinance-21-green-forest-tribune-
may-11-1899-at-1-green-forest-arkansas ;

102.    In 1899, San Antonio, Texas passed a law that prohibited the carry of pistols and many other deadly weapons "within the corporate limits of the city of San Antonio." However the law stated "[t]he preceding section shall not apply… to persons travelling." *See* Exhibit 57.  Theodore Harris, Charter and Ordinances of the City of San Antonio. Comprising All Ordinances of a General Character in Force August 7th, 1899 Page 183-184, Image 188-189 (1899) available at The Making of Modern Law: Primary Sources. Available at

https://firearmslaw.duke.edu/laws/theodore-harris-charter-and-ordinances-of-the-city-of-san-antonio-comprising-all-ordinances-of-a-general-character-in-force-august-7th-1899-page-183-184-image-188-189-1899-available-at-the-makin ;

103.    In 1899, Jerome, Arizona prohibited the public carry of firearms and many other deadly weapons, but the law did not apply "to any persons traveling peacefully through the town of Jerome." *See* Exhibit 58. Ordinance no. 2, §§ 1, 6, 7, & 21–23, JEROME, ARIZONA, ORDINANCES OF THE TOWN (Jerome News 1906) (Law Passed 1899). Available at

https://firearmslaw.duke.edu/laws/ordinance-no-2-1-6-7-21-23-jerome-arizona-ordinances-of-the-town-jerome-news-1906-law-passed-1899 ;

104.    In 1894, Huntsville, Missouri prohibited the concealed carry of deadly or dangerous weapons but exempted "persons moving or travelling peaceably through this state." *See* Exhibit 59.  The Revised Ordinances of the City of

Huntsville, Missouri, of 1894. Collated, Revised, Printed and Published by
Authority of the Mayor and Board of Aldermen of the City of Huntsville,
Missouri, Under an Ordinance of the Said City, Entitled: "An Ordinance in
Relation to Ordinances, and the Publication Thereof." Approved on the 11th Day
of June, 189 Page 58-59, Image 58-59 (1894) available at The Making of Modern
Law: Primary Sources. Available at https://firearmslaw.duke.edu/laws/the-
revised-ordinances-of-the-city-of-huntsville-missouri-of-1894-collated-revised-
printed-and-published-by-authority-of-the-mayor-and-board-of-aldermen-of-the-
city-of-huntsville-missouri-under ;

105.   In 1894, Alameda County, California passed a law that made it
unlawful for any person not being a public officer or traveler, or not having a
permit…to wear or carry, concealed, any pistol, dirk, brass or iron knuckles, sand
club, slung shot, or other dangerous or deadly weapon." *See* Exhibit 60.
Ordinance no. 148, §§ 10-14, 48, 61, & 84, ALAMEDA, CHARTER AND
GENERAL ORDINANCES (Argus 1894) (Passed 1890). Available at
https://firearmslaw.duke.edu/laws/ordinance-no-148-11-14-48-61-84-alameda-
charter-and-general-ordinances-argus-1894-passed-1890 ;

106.   In 1883, Prescott, Arizona prohibited the carry of deadly weapons
within the city limits but exempted "persons moving or traveling peaceably
through the city of Prescott." *See* Exhibit 61.  Ordinance no. 31, §§ 1-5, Mayor

and Common Council of the City of Prescott (1883) (Prescott, Arizona).

Available at https://firearmslaw.duke.edu/laws/ordinance-no-31-1-5-mayor-and-common-council-of-the-city-of-prescott-1883-prescott-arizona ;

107.   In 1869, Bedford, Indiana passed a law which stated "[e]very person, not being a traveler, who shall wear or carry any dirk, pistol, bowie knife, dagger, sword in cane, or any other dangerous or deadly weapon concealed, or who shall carry or wear such weapon with the intent and avowed purpose of injuring his fellow man, shall, upon conviction thereof, be fined in any sum not more than ten dollars." Ordinance No. 1: Protecting Public Morality, Order and Safety, undated, reprinted in Ordinances of the Town of Bedford (1869) (Indiana). Available at https://firearmslaw.duke.edu/laws/ordinance-no-1-protecting-public-morality-order-and-safety-undated-reprinted-in-ordinances-of-the-town-of-bedford-1869-indiana , attached as Exhibit 62;

108.   In 1869, Van Bruen, Arkansas passed a law prohibiting the carry of firearms and other deadly weapons but exempted "travelers in transit through the city." *See* Exhibit 63.  Fire-Arms Ordinance of May 1, 1869, §§ 1–6, THE VAN BUREN PRESS, May 4, 1869, at 2 (Van Buren, Arkansas). Available at https://firearmslaw.duke.edu/laws/fire-arms-ordinance-of-may-1-1869-1-6-the-van-buren-press-may-4-1869-at-2-van-buren-arkansas ;

109.   In 1867, Memphis, Tennessee prohibited the "carrying a dirk-sword

cane, Spanish stiletto, belt or pocket pistol, or other dangerous weapons, either

openly or concealed, except in the public service or for defense while traveling."

*See* Exhibit 64. Special Order, §§ 1700-1702, PUBLIC LEDGER, Dec. 30, 1867,

at 3 (Memphis, Tennessee). Available at

https://firearmslaw.duke.edu/laws/special-order-1700-1702-public-ledger-dec-30-1867-at-3-memphis-tennessee ;

110.   In 1867, Memphis, Tennessee also had a law which prohibited selling

to a minor a pistol or other dangerous weapons "except a gun for hunting or

weapon for defense in traveling." *See* Exhibit 65. William H. Bridges, Digest of

the Charters and Ordinances of the City of Memphis, from 1826 to 1867,

Inclusive, Together with the Acts of the Legislature Relating to the City, with an

Appendix Page 50, Image 50 (1867) available at The Making of Modern Law:

Primary Sources. Available at https://firearmslaw.duke.edu/laws/william-h-bridges-digest-of-the-charters-and-ordinances-of-the-city-of-memphis-from-1826-to-1867-inclusive-together-with-the-acts-of-the-legislature-relating-to-the-city-with-an-appendix-page-50 ;

111.   In 1866, Indianapolis, Indiana, made it "unlawful for any person,

other than a traveler, to carry or wear, concealed about his person, any dirk, bowie

knife, dagger, sword in cane, brass knucks, slung shots, or any other dangerous or

deadly weapons." *See* Exhibit 66.  An Ordinance Defining Sundry Offenses, and

Prescribing Punishment Therefor, §§ 4–6, INDIANAPOLIS, INDIANA, THE

CHARTER AND GENERAL ORDINANCES OF THE CITY (Sentinel Company

1875) (Law Passed 1866). https://firearmslaw.duke.edu/laws/an-ordinance-

defining-sundry-offenses-and-prescribing-punishment-therefor-4-6-indianapolis-

indiana-the-charter-and-general-ordinances-of-the-city-sentinel-company-1875-

law-passed-1866 ;

112.    In 1855, New Albany, Indiana passed a law which made it illegal "for

any person, not being a traveler[1] to wear or carry, within the corporate limits of

the city of New Albany, any brass or other metallic knucks, slung-shot, dirk,

pistol, sword in a cane, or other dangerous weapon concealed." *See* Exhibit 67.

An Ordinance to Prohibit the Wearing or Carrying of Concealed Weapons in the

City of New Albany, §§ 1–3, NEW ALBANY, INDIANA, LAWS, GENERAL

AND SPECIAL, OF THE CITY (R. J. L. Matthews 1870) (Law Passed 1855).

Available at https://firearmslaw.duke.edu/laws/an-ordinance-to-prohibit-the-

wearing-or-carrying-of-concealed-weapons-in-the-city-of-new-albany-1-3-new-

albany-indiana-laws-general-and-special-of-the-city-r-j-l-matthews-1870-law-

passed-1855 ;

113.    An enduring tradition American tradition of extra protection for

travelers continued into the Twentieth Century[10];

114.   In 1900, Santa Barbra had a law which made it "unlawful for any person not being a public officer or traveler, or not having a permit from the mayor of said city, to wear or carry concealed within the corporate limits of said city, any pistol, revolver, dirk, knife, or other deadly weapon." *See* Exhibit 68. Charter and Ordinances and Rules of the Council: City of Santa Barbara, State of California; Published by Order of the Council of the City of Santa Barbara, November Twentieth, Nineteen Hundred (s.l., s.n., 1900), 350-51. Ordinance Number 354—An Ordinance to Prevent the Carrying of Concealed Deadly Weapons and to Prescribe a Punishment for the Violation Thereof, §§ 1-4. Approved November 9, 1900. Available at

https://firearmslaw.duke.edu/laws/ordinance-no-354-1-4-santa-barbara-charter-and-ordinances-and-rules-of-the-council-sine-nomine-1900 ;

115.   In 1900, Texarkana, Arkansas banned the carry of most pistols and other deadly weapons "provided further that nothing in this ordinance be so construed as to prohibit any person from carrying any weapon when on a journey or upon his own premises." *See* Exhibit 69. An Ordinance to Prevent the Carrying of Weapons, §§ 1–4, THE DAILY TEXARKANIAN, May 28, 1900, at 2

---

[10] Plaintiffs again note that these citations indicate an enduring tradition that was rooted in 1791 and has continued past 1791.

(Texarkana, Arkansas). Available at https://firearmslaw.duke.edu/laws/an-ordinance-to-prevent-the-carrying-of-weapons-1-4-the-daily-texarkanian-may-28-1900-at-2-texarkana-arkansas ;

116.   In 1905, Lexington, Mississippi banned the concealed carry of pistols and other deadly weapons but exempted "a person who is traveling or setting out on a journey." *See* Exhibit 70. An Ordinance to Prevent the Carrying of Deadly Weapons Concealed and Prescribing the Punishment Therefor, § 1, THE LEXINGTON ADVERTISER, Aug. 10, 1905, at 1 (Lexington, Mississippi). Available at https://firearmslaw.duke.edu/laws/an-ordinance-to-prevent-the-carrying-of-deadly-weapons-concealed-and-prescribing-the-punishment-therefor-1-the-lexington-advertiser-aug-10-1905-at-1-lexington-mississippi ;

117.   In 1905, Greenwood, Mississippi banned the concealed carry of pistols and other deadly weapons but said that it was a defense to this law that a person "was traveling and was not a tramp, or that he was starting out on a journey and was not a tramp." *See* Exhibit 71. Ordinance no. 492, THE COMMONWEALTH, Jun. 16, 1905, pt. 1, at 3 (Greenwood, Mississippi). Available at https://firearmslaw.duke.edu/laws/ordinance-no-492-the-commonwealth-jun-16-1905-pt-1-at-3-greenwood-mississippi ;

118.   In 1908, Yazoo City, Mississippi banned the concealed carry of pistols and other deadly weapons but made it a defense that a person "was

traveling and was not a tramp, or was setting out on a journey, and was not a

tramp." *See* Exhibit 72. YAZOO CITY, MISSISSIPPI, THE CHARTER AND

CODE OF THE ORDINANCES, ch. 20, §§ 293-300 (sine nomine 1908).

Available at https://firearmslaw.duke.edu/laws/laws-regulating-carrying-and-

brandishing-firearms-who-can-own-them-where-they-can-be-brought-etc-ch-20-

c2a7c2a7-293-300-in-the-charter-and-code-of-the-ordinances-of-yazoo-city ;

119.   In 1909, State of Missouri, amended its prior statute to prohibit the

concealed carry of any "dangerous or deadly weapon of any kind or description"

but exempted "persons traveling in a continuous journey peaceably through this

state." *See* Exhibit 73. Act of Apr. 28, § 1, 1909 Mo. Laws 452, 452 (Hugh

Stephens Printing Co. sine anno). https://firearmslaw.duke.edu/laws/act-of-apr-

28-1-1909-mo-laws-452-452-hugh-stephens-printing-co-sine-anno ;

120.   In 1917, the City of Joplin, Missouri prohibited the concealed carry of

any "dangerous or deadly weapon of any kind or description" but exempted

"persons traveling in a continuous journey peaceably through this state." *See*

Exhibit 74. Joplin Code of 1917, Art. 67, § 1201. Weapons; Deadly. Available at

https://firearmslaw.duke.edu/laws/joplin-code-of-1917-art-67-c2a7-1201-

weapons-deadly ;

121.   In 1908, Slater, Missouri banned the concealed carry of any

"dangerous or deadly weapon" but exempted "persons moving or traveling

peaceably through this state." *See* Exhibit 75.  SLATER, MISSOURI, REVISED

ORDINANCES OF THE CITY, ch. 19, §§ 231-236 (Rustler Job Print 1908).

Available at https://firearmslaw.duke.edu/laws/a-law-regulating-the-carrying-of-

weapons-in-slater-mo-ch-19-c2a7-231-in-revised-ordinances-of-the-city-of-slater-

saline-county-missouri-1908 ;

122.   In 1905, Indiana made it a crime for "[e]very person, not being a

traveler", from carrying "any dirk, pistol, bowie-knife, dagger, sword in cane or

any other dangerous or deadly weapon concealed." *See* Exhibit 76. 1905 Ind. Acts

687–88, Weapon—Carrying Dangerous § 449. Available at

https://firearmslaw.duke.edu/laws/1905-ind-acts-687-88-weapon-carrying-

dangerous-c2a7-449 ;

123.   In 1905, the Territory of Arizona banned the carry of pistols and many

other dangerous weapons "within any settlement, town, village or city" but

exempted "persons traveling." *See* Exhibit 77. Laws regulating brandishing,

firing, carrying, & concealed carrying of firearms, Title 11, §§ 381, 382, 385, 386,

390, & 392 in The Revised Statutes of Arizona Territory (1901). Available at

https://firearmslaw.duke.edu/laws/laws-regulating-brandishing-firing-carrying-

concealed-carrying-of-firearms-title-11-c2a7c2a7-381-382-385-386-390-392-in-

the-revised-statutes-of-arizona-territory-1901 ;

124.   In 1905, New Franklin, Missouri made it a crime to carry concealed

deadly or dangerous weapons but exempted "persons moving or traveling peaceably through this state." *See* Exhibit 78.  An Ordinance Concerning Misdemeanors, §§ 14-16, NEW FRANKLIN, MISSOURI, GENERAL ORDINANCES OF THE CITY (sine nomine 1905) (Approved 1907). Available at https://firearmslaw.duke.edu/laws/an-ordinance-concerning-misdemeanors-c2a7c2a7-14-15-in-general-ordinances-of-the-city-of-new-franklin-1907 ;

125.    In 1907, Sarcoxie, Missouri made it a crime to carry concealed deadly or dangerous weapons but exempted "persons moving or traveling peaceably through this state." *See* Exhibit 79.  SARCOXIE, MISSOURI, REVISED ORDINANCES, Ordinance no. 119, ch. 30, §§ 184-186 (Record Power Job Print 1907). Available at https://firearmslaw.duke.edu/laws/deadly-weapons-concealed-etc-shooting-firearms-ch-30-c2a7c2a7-184-185-in-revised-ordinances-city-of-sarcoxie-jasper-county-mo-1907 ;

126.    1906, Butler, Missouri, made it a crime to carry concealed deadly or dangerous weapons but exempted "persons moving or traveling peaceably through this state." *See* Exhibit 80.  BUTLER, MISSOURI, REVISED ORDINANCES OF THE CITY, ch. 15, art. 1, Ordinance no. 18, §§ 44–45 (Times Print 1906). https://firearmslaw.duke.edu/laws/butler-mo-rev-ordinances-ch-15-art-1-no-18-c2a7c2a7-44-45-at-78-90-91 ;

127.    In 1905, Reno, Neveda made it a crime "to wear, carry, or have

concealed upon his person any dirk knife, pistol, sword in case, slung shot, brass

knuckles, razor or other dangerous weapon without first obtaining permission

from the City Council" but this law did not apply "to persons traveling through

the state." *See* Exhibit 81.  City Ordinance No. 45, RENO EVENING GAZETTE,

Sept. 6, 1905, at 6 (Reno, Nevada). Available at

https://firearmslaw.duke.edu/laws/city-ordinance-no-45-reno-evening-gazette-

sept-6-1905-at-6-reno-nevada ;

128.   In 1903, Bevier, Missouri prohibited the concealed carry of

dangerous or deadly weapons but exempted "persons moving or traveling

peaceably through the state." *See* Exhibit 82.  BEVIER, MISSOURI, REVISED

ORDINANCES OF THE CITY, ch. 21, art. 1, §§ 329-330 (sine nomine 1903).

https://firearmslaw.duke.edu/laws/ordinances-that-prohibit-carrying-concealed-

weapons-bringing-weapons-to-certain-places-and-selling-weapons-to-minors-

ordinance-no-31-c2a7-10-in-revised-ordinances-of-the-city-of-richmond-mis ;

129.   In 1903, City of Hamilton, Cauldwell County, Missouri prohibited the

concealed carry of dangerous or deadly weapons but exempted "persons moving

or traveling peaceably through the state." *See* Exhibit 83.   Laws concerning

carrying weapons in certain places, sales of weapons to minors, etc., Chapter 21—

Misdemeanors, § 162, in Revised Ordinances of the City of Hamilton, Cauldwell

County, Missouri (1903). https://firearmslaw.duke.edu/laws/laws-concerning-

carrying-weapons-in-certain-places-sales-of-weapons-to-minors-etc-chapter-21-misdemeanors-c2a7-162-in-revised-ordinances-of-the-city-of-hamilton-cauldwell-county-miss ;

130.   In 1902, the City of Pattonsburg, Missouri prohibited the concealed carry of dangerous or deadly weapons but exempted "persons moving or traveling peaceably through this state." *See* Exhibit 84. Not to Carry Weapons Concealed; Where; nor Sell to Minors, etc., Ch. 43, An Ordinance in Relation to Dangerous and Deadly Weapons, §§ 1-3, in The Revised Ordinances of the City of Pattonsburg, Missouri (1902). https://firearmslaw.duke.edu/laws/not-to-carry-weapons-concealed-where-nor-sell-to-minors-etc-ch-43-an-ordinance-in-relation-to-dangerous-and-deadly-weapons-c2a7c2a7-1-3-in-1902 ;

131.   In 1901, Elgin, Texas prohibit the carry of "pistol, dirk, dagger, slungshot, sword-cane, spear, or knuckles made of any metal or any hard substance, bowie-knife, or any other knife manufactured or sold for the purposes of offense or defense" but exempted "persons traveling." *See* Exhibit 85.  ELGIN, THE CIVIL AND CRIMINAL ORDINANCES OF THE CITY, ch. 23, arts. 173-175 (Elgin Leader Job Print 1901). Available at

https://firearmslaw.duke.edu/laws/elgin-the-civil-and-criminal-ordinances-of-the-city-ch-23-arts-173-175-elgin-leader-job-print-1901 ;

132.   Many other cities historically had similar laws;

133.   As shown above, there is no historical justification for a ban on nonresidents carrying firearms[11];

134.   Since *Bruen*, three federal courts have found bans on nonresidents being allowed to carry in a state unconstitutional. *See Hoffman v. Bonta*, 789 F. Supp. 3d 995 (S.D. Cal. 2025) (California); *Cal. Rifle & Pistol Ass'n v. L.A. Cty. Sheriff's Dep't*, 745 F. Supp. 3d 1037 (C.D. Cal. 2024) (California law on a preliminary injunction) *Higbie v. James*, 795 F. Supp. 3d 307 (N.D.N.Y. 2025) (New York);

135.   For the foregoing reasons, H.R.S. §134-9(a)(5) violates the Second Amendment both as applied to Plaintiffs and facially, and WHEREFORE, Plaintiffs seek declaratory and injunctive relief as set forth below;

## COUNT II (DECLARATORY JUDGMENT)

136.   Plaintiffs repeat and reallege the allegations of Paragraphs above, as if set forth herein;

137.   The Declaratory Judgment Act provides: "In a case of actual controversy within its jurisdiction, any court of the United States may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C.

---

[11] Plaintiffs do not concede that any Hawaii state or local law, regulation, policy, or custom pertaining to the exercise of the Second Amendment in any manner, is constitutional.

2201(a);

138.   Absent a declaratory judgment, there is a substantial likelihood that Plaintiffs will suffer irreparable injury in the future;

139.   There is an actual controversy between the parties of sufficient immediacy and reality to warrant issuance of a declaratory judgment;

140.   This Court possesses an independent basis for jurisdiction over the parties;

141.   Plaintiffs request a declaratory judgment declaring that Defendant's laws, customs, rules, habits and policies, and Hawaii Revised Statute § 134-9(a)(5), which denies Plaintiffs the right to obtain a concealed carry license and carry a firearm concealed in exercise of their Second Amendment rights, violates Plaintiffs' Second Amendment rights.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs request that judgment be entered in their favor and against Defendant as follows:

1.     An order preliminarily and permanently compelling Defendant, and her officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction, to not enforce H.R.S. §134-9(a)(5) as applied to Plaintiffs;

2.     Preliminarily, and thereafter permanently enjoin Defendants from

enforcing H.R.S. §134-9(a)(5) facially.

3.      Declare that H.R.S. §134-9(a)(5) is unconstitutional both as applied to Plaintiffs and facially to the general public.

4.      Award nominal damages;

5.      Award costs of suit, including attorney fees and costs pursuant to 42 U.S.C. §1988;

6.      Award compensatory damages;

7.      Such other relief consistent with the injunction as appropriate; and

8.      Such other further relief as the Court deems just and appropriate.

DATED:  Honolulu, Hawaii; <u>March 7, 2026</u>.

Respectfully submitted,

/s/ *Kevin O'Grady*
Kevin Gerard O'Grady
Law Office of Kevin O'Grady, LLC
1164 Bishop Street, Suite 1605
Honolulu, Hawaii 96813
(808) 521-3367
Hawaii Bar No. 8817
Kevin@KevinOGradyLaw.Com

/s/ *Alan Beck*
Alan Alexander Beck
Law Office of Alan Beck
2692 Harcourt Drive
San Diego, CA  92123
(619) 905-9105
Hawaii Bar No. 9145
Alan.alexander.beck@gmail.com

Attorneys for Plaintiffs

## VERIFICATION

I, Johnathon Solinsky, declare as follows:

1. I am a Plaintiff in the present case and a citizen of the United States of America.

2 . I have personal knowledge of myself, my activities, and my intentions , including those set out in the forgoing *Verified Complaint for Declaratory and Injunctive Relief,* and if called on to testify, I would competently testify as to the matters stated herein.

3. I verify under penalty of perjury under the laws of the United States of America that the factual statements in this *Verified Complaint for Declaratory and Injunctive Relief* concerning myself, my activities and my intentions are true and correct.

Executed on March 5, 2026

JOHNATHON SOLINSKY

## VERIFICATION

I, Kainoa Kaku, declare as follows:

1. I am President of the Hawaii Rifle Association and am authorized to represent it in this lawsuit and am thus am a Plaintiff in the present case and a citizen of the United States of America.

2 . I have personal knowledge of myself, my activities, and my intentions , including those set out in the forgoing *Verified Complaint for Declaratory and Injunctive Relief,* and if called on to testify, I would competently testify as to the matters stated herein.

3. I verify under penalty of perjury under the laws of the United States of America that the factual statements in this *Verified Complaint for Declaratory and Injunctive Relief* concerning myself, the Hawaii Rifle Association, the Hawaii Rifles Association activities, its members, my activities and my intentions are true and correct.

Executed on March 5th, 2026

_____

KAINOA KAKU