Kevin Gerard O'Grady
Law Office of Kevin O'Grady, LLC
1164 Bishop Street, Suite 1605
Honolulu, Hawaii 96813
(808) 521-3367
Hawaii Bar No. 8817
Kevin@KevinOGradyLaw.Com

Alan Alexander Beck
Law Office of Alan Beck
2692 Harcourt Drive
San Diego, CA  92123
(619) 905-9105
Hawaii Bar No. 9145
Alan.alexander.beck@gmail.com

Attorneys for Plaintiffs

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JOHNATHON SOLINSKY, HAWAII RIFLE ASSOCIATION, <br><br> Plaintiffs, <br><br> v. <br><br> ANNE E. LOPEZ, IN HER OFFICIAL CAPACITY AS ATTORNEY GENERAL OF THE STATE OF HAWAII <br><br> Defendant. | Civil Action No. _____ <br> MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY INJUCTION |

## **Table of Contents**

I.  Introduction .................................................................................1

II.  Statement of Facts .......................................................................2

III.  Standard for Preliminary Injunction ...........................................3

IV.  Plaintiffs Have a Strong Likelihood of Success on the Merits .................4

    A.  Plaintiffs' Conduct is Covered by the Second Amendment's Plain Text ..5

    B.  This Court Should Not Apply a Nuanced Approach .................................9

    C.  Travelers From Other States Were Historically Exempted from State and Local Restrictions on Carrying Firearms .................................9

V.  Plaintiffs will suffer irreparable harm ...........................................21

VI.  Granting the PI is in the Public Interest and Serves Equity .................22

VII.  Waiver of Bond is Proper and Appropriate Under These Circumstances ....................................................................24

VIII.  This Court Should Consolidate Pursuant to Rule 65(a)(2) ...................25

IX.  Conclusion ...............................................................................25

## Table of Authorities

*Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011) ................4

*B&L Prods., Inc. v. Newsom*, 104 F.4th 108 (9th Cir. 2024) ....................................7

*Baird v. Bonta*, 81 F.4th 1036 (9th Cir. 2023)................................................. passim

*Bliss v. Commonwealth*, 12 Ky. 90 (1822).................................................................11

*Cal. Rifle & Pistol Ass'n v. L.A. Cty. Sheriff's Dep't*, 745 F. Supp. 3d 1037 (C.D. Cal. 2024).....................................................................................................1, 20

*District of Columbia v. Heller*, 554 U.S. 570, (2008) ...........................................6, 8

*Donald J. Trump for President, Inc. v. Bullock*, No. CV 20-66-H-DLC, 2020 U.S. Dist. LEXIS 169794, at (D. Mont. Sep. 16, 2020) ..............................................25

*Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073 (9th Cir. 2014).............................22

*East Bay Sanctuary Covenant v. Trump*, 349 F.Supp.3d 838 (N.D. Cal. 2018) .....24

*Elliott v. Kiesewetter*, 98 F.3d 47 (3d Cir. 1996)......................................................24

*Elrod v. Burns*, 427 U.S. 347 (1976).........................................................................22

*Ezell v. City of Chi.,* 651 F.3d 684 (7th Cir. 2011) ...................................................22

*Higbie v. James*, 795 F. Supp. 3d 307 (N.D.N.Y. 2025) .............................. 1, 20, 21

*Hoffman v. Bonta*, 789 F. Supp. 3d 995 (S.D. Cal. 2025) ..................................1, 21

*Johnson v. Couturier*, 572 F.3d 1067 (9th Cir. 2009) ..............................................24

*Klein v. City of San Clemente*, 584 F.3d 1196 (9th Cir. 2009) .................................22

*Koons v. Platkin*, 2023 WL 3478604 (D.N.J. May 16, 2023)....................................23

*May v. Bonta*, 2023 WL 8946212 (C.D. Cal. Dec. 20, 2023)....................................23

*McDonald v. City of Chi.*, 561 U.S. 742 (2010) .......................................................22

*Melendres v. Arpaio*, 695 F.3d 990 (9th Cir. 2012)................................................22

*Monterey Mech. Co. v. Wilson*, 125 F.3d 702 (9th Cir. 1997)................................22

*N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 142 S. Ct. 2111 (2022). passim

*Nguyen v. Bonta*, 140 F.4th 1237 (9th Cir. 2025) ..................................................7, 9

*Nunn v. State*, 1 Ga. 243 (1846)............................................................................10

*People of the State of Cal. ex rel. Van De Kamp v. Tahoe Regency Planning Agency*, 766 F.2d 1319 (9th Cir. 1985) ................................................................24

*Preminger v. Principi*, 422 F.3d 815 (9th Cir. 2005) ...............................................23

*United States v. Rahimi,* 144 S. Ct. 1889 (2024).....................................................20

*Riley's Am. Heritage Farms v. Elsasser,* 32 F.4th 707 (9th Cir. 2022) ....................4

*Rodriguez v. Robbins*, 715 F.3d 1127 (9th Cir. 2013) .............................................23

*State v. Callicutt*, 69 Tenn. 714 (1878) ..................................................................15

*United States v. Perez-Garcia*, 96 F.4th 1166 (9th Cir. 2024) ................................7

*Valle del Sol Inc. v. Whiting*, 732 F.3d 1006 (9th Cir. 2013)...................................23

*Weaver v. City of Montebello*, 370 F.Supp.3d 1130 (C.D. Cal. 2109) ....................24

*Wolford v. Lopez*, 2023 WL 5043805 (D. Haw. Aug. 8, 2023).................................23

**Statutes**

1813 Ky. Acts 100, An Act to Prevent Persons in this Commonwealth from Wearing Concealed Arms, Except in Certain Cases, ch. 89, § 1 .........................11

1819 Ind. Acts 39, An Act to Prohibit the Wearing of Concealed Weapons............11

1821 Tenn. Pub. Acts 1516, An Act to Prevent the Wearing of Dangerous and Unlawful Weapons, ch. 13 .......................................................................11

1841 Ala. Laws 149 ...................................................................................12

1867 Nev. Stat. 66 ....................................................................................12

1883 Ariz. Sess. Laws 21–22 ....................................................................13

1887 Acts of the Legislative Assembly, of the Territory of New Mexico, Twenty-Seventh Session: Convened at the Capitol, at the City of Santa Fe, on Monday, the 27th Day of December, 1886, and Adjourned on Thursday, the 24th Day of February, 1887 (Las Vegas, NM: J. A. Carruth, 1887), 55–58. Chapter 30—An Act to Prohibit the Unlawful Carrying and Use of Deadly Weapons, §§ 1–15. Approved February 18, 1887 ........................................................................13

An Act Against Wearing Swords, ch. 9, N.J. STAT. (W. Bradford 1881) (Law Passed 1686) ..........................................................................................10

An Act to Prevent the Carrying of Concealed Weapons, and for Other Purposes, ch. 46, §§ 1–7, 1878 Miss. Laws 175, 175–76 (Power & Barksdale).......................14

An Ordinance to Prohibit the Carrying of Concealed Deadly Weapons." Marysville Daily Democrat, February 7, 1889, p. 4. Volume 9, Number 85. (Marysville, CA) .......................................................................................................17

City of San Diego, Digital Archives, Ordinance Number 19—An Ordinance for the Prevention of Offenses Against the Peace, Good Order and Health of the City of San Diego, §§ 2, 3, 39, & 41. Ordinances 1 - 50 (June 14, 1886 - January 24, 1887) in Ordinance Files 1850 - 1894 ...............................................................18

Concealed Weapons, ch. 25, art. 47, §§ 1–10, 1890 Okla. Territory Sess. Laws 495, 495–96 (State Capital Printing Co. 1891) (Law Passed 1890)............................15

Fred L. Button, ed., General Municipal Ordinances of the City of Oakland, California (Oakland, CA; Enquirer, 1895), p. 218, sec. 1, citing An Ordinance to Prohibit the Carrying of Concealed Weapons, No. 1141.......................................16

H.R.S. §134-9(a)(5) .............................................................. 1, 2, 25

v

Josiah A. Van Orsdel, Attorney General, Revised Statutes of Wyoming, in Force December 1, 1899 Including the Magna Charta, Declaration of Independence, Articles of Confederation, Organic Act of Territory of Wyoming, Act of Admission of the State of Wyoming, Constitution of the United States and of Wyoming, and the Rules of the Supreme Court Page 1253, Image 1253 (1899) 15

L. W. Moultrie, Charter and Ordinances of the City of Fresno Page 30, Image 28 (1896)....................................................................................................17

MO. REV. STAT., ch. 24, art. 2, §§ 1274-1278 (Carter & Regan 1879)................14

Ordinance No. 10: An Ordinance Prohibiting the Carrying of Concealed Deadly Weapons, and Fixing the Penalty Therefor." The Lompoc Record, August 21, 1888, p. 2. Number 23; Volume 14......................................................................18

Ordinance no. 15—An Ordinance to Prohibit the Discharge of Fire Arms and the Carrying of Deadly or Concealed Weapons within the Corporate Limits of the City of Modesto, §§ 1-5. Modesto City Council Ordinances Passed from 1884 to 1899 (#1 - #185). Introduced September 19, 1884; Passed September 16, 1884; Published in  the Modesto Herald October 2, 1884.............................................19

Ordinance No. 6" The Fresno Weekly Republican, November 7, 1885, p. 3. Volume 10, Number 9 .......................................................................................................17

Ordinance no. 84, Charter and Ordinances of the City of Sacramento, Prohibiting the Carrying of Concealed Deadly Weapons (1876) .............................................16

Ordinances of Park Commissioners (San Francisco: P.J. Thomas, 1884), 8. General Order no. 1,603—Relating to the Police Department, § 22—Prohibiting the Carrying of Concealed Deadly Weapons. Approved September 17, 1880...........19

Revised Charter and Compiled Ordinances and Resolutions of the City of Los Angeles 83 (Wm. M. Caswell ed., 1878) .............................................................17

Revised Statutes of Texas, 4243 (1879)...................................................................13

REVISED STATUTES OF THE STATE OF ARKANSAS, ADOPTED AT THE OCTOBER SESSION OF THE GENERAL ASSEMBLY OF SAID STATE, A.D. 1837, at 280 (1838) (1837 law applying to every person "unless upon a journey") ...................................................................................................................12

Seymour Dwight Thompson, A Compilation of the Statute Laws of the State of Tennessee, of a General and Permanent Nature, Compiled on the Basis of the Code of Tennessee, With Notes and References, Including Acts of Session of 1870-'71 Page 125, Image 794 (Vol. 2, 1873)......................................................15

The Statutes of California Passed at the Fourteenth Session of the Legislature, 1863: Begun on Monday, the Fifth Day of January, and Ended on Monday, the Twenty-Seventh Day of April (Sacramento, CA: Benj. P. Avery, 1863), 748. Chapter 485—An Act to Prohibit the Carrying of Concealed Weapons, §§ 1–2. Approved April 27, 1863 .....................................................................................12

Wade Keyes, The Code of Alabama, 1876 : with References to the Decisions of the Supreme Court of the State upon the Construction of the Statutes; and in Which the General and Permanent Acts of the Session of 1876-7 have been Incorporated Page 882, Image 898 (1877) ..................................................................................14

**Other Authorities**

11A Charles Alan Wright et al., Federal Practice and Procedure § 2948.1 (2d ed. 1995) ............................................................................................................22

**Rules**

F.R.C.P. 65(a)(2).......................................................................................................25

F.R.C.P. 65(c) ...........................................................................................................24

# I. <u>Introduction</u>

At issue here is Hawaii law which prohibits nonresidents from applying for a concealed carry permit. *See* H.R.S. §134-9(a)(5)[1].  Hawaii law is now an extreme outlier.[2]  Since the Supreme Court's ruling in *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 142 S. Ct. 2111 (2022), two states have had their ban on nonresidents applying for concealed carry permits struck down. *See Hoffman v. Bonta*, 789 F. Supp. 3d 995 (S.D. Cal. 2025) (California); *Cal. Rifle & Pistol Ass'n v. L.A. Cty. Sheriff's Dep't*, 745 F. Supp. 3d 1037 (C.D. Cal. 2024) (California law on a preliminary injunction) *Higbie v. James*, 795 F. Supp. 3d 307 (N.D.N.Y. 2025)(New York).

Plaintiff Solinsky is a military veteran who was formerly stationed in Hawaii and currently lives in Viriginia. He still travels to Hawaii and applied for a

---

[1] §134-9 Licenses to carry. (a) The chief of police of a county shall grant a license to an applicant to carry a pistol or revolver and ammunition concealed on the licensee's person within the State, if the applicant:
(1) Satisfies each of the criteria established by or pursuant to subsection (d);
(2) Is not prohibited under section 134-7 from the ownership, possession, or control of a firearm and ammunition;
(3) Is not found to be lacking the essential character or temperament necessary to be entrusted with a firearm as set forth in subsection (h);
(4) Is a citizen, national, or lawful permanent resident of the United States or a duly accredited official representative of a foreign nation;
**(5) Is a resident of the State; and**
(6) Is of the age of twenty-one years or more.
[2] To Plaintiff's knowledge, every other State in the Union currently allows for nonresident some form of public carry. Either open or concealed.

concealed carry permit in Hawaii.  Despite Honolulu Police Department finding that he was otherwise fully qualified to be issued a concealed carry permit, his application was denied solely because he is not a resident of Hawaii. Plaintiff Hawaii Rifle Association has other similarly situated members.

Carrying a firearm is plainly within the text of the Second Amendment pursuant to *Bruen*. And historically, Americans did not lose their Second Amendment rights simply because they were traveling.  In fact, throughout American history from the Founding era onward, the law often gave added protections to traveler's firearms rights because of the dangers of traveling away from home.  There is no historical justification for H.R.S. §134-9(a)(5).  Mr. Solinsky should not lose his Second Amendment rights because he is traveling in Hawaii. This Court should join a consensus of courts in finding that a ban on nonresident public carry violates the Second Amendment. A preliminary injunction should issue.

## II. Statement of Facts

Plaintiff, the Hawaii Rifle Association, (hereinafter "HRA") is a 501(c)(7) non-profit organization dedicated to defending Hawaiians' Second Amendment rights. It has members who live outside of the state of Hawaii, and thus are not "residents" of the state of Hawaii, who would apply for concealed carry permits if Hawaii law allowed for nonresident concealed carry permit applicants to be

granted concealed carry permits. Complaint ¶ 4.  Mr. Solinsky is a member of

HRA.  Complaint ¶ 24.

Plaintiff Solinsky is a resident of the State of Virginia.  Complaint ¶ 3.  He

previously was stationed in Hawaii while serving in the armed forces. Complaint ¶

30.  Mr. Solinsky occasionally travels to Hawaii on vacation and plans to do so

again in the near future. Complaint ¶ 34. Mr. Solinsky has fulfilled all criteria to be

issued a concealed carry permit in Hawaii. Complaint ¶ 13. On September 5, 2025,

he applied for a concealed carry permit with the Honolulu Police Department

("HPD").  On February 3, 2026, he received a letter from HPD which stated he

fulfills all criteria to be issued a concealed carry permit other than the residency

requirement. Complaint ¶ 27.  However, due to fact he is not a resident of Hawaii,

his application had to be denied. Complaint ¶ 27.

This lawsuit follows.

## III.    <u>Standard for Preliminary Injunction</u>

"The appropriate legal standard to analyze a preliminary injunction motion

requires a district court to determine whether a movant has established that (1) he is

likely to succeed on the merits of his claim, (2) he is likely to suffer irreparable harm

absent the preliminary injunction, (3) the balance of equities tips in his favor, and

(4) a preliminary injunction is in the public interest." *Baird v. Bonta*, 81 F.4th 1036,

1040 (9th Cir. 2023). "It is well-established that the first factor is especially

important when a plaintiff alleges a constitutional violation and injury. If a plaintiff in such a case shows he is likely to prevail on the merits, that showing usually demonstrates he is suffering irreparable harm no matter how brief the violation." *Id.* "It is "always in the public interest to prevent the violation of a party's constitutional rights."" *Id* (quoting *Riley's Am. Heritage Farms v. Elsasser,* 32 F.4th 707, 731 (9th Cir. 2022)). "An "individual's right to carry a handgun for self-defense outside the home" under the Second Amendment is one such constitutional right." *Id* (quoting *N.Y. State Rifle & Pistol Ass'n v. Bruen,* 142 S. Ct. 2111, 2122 (2022)). Alternatively, an "injunction is appropriate when a plaintiff demonstrates that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011) (internal citation omitted).

## IV.    Plaintiffs Have a Strong Likelihood of Success on the Merits

To determine whether a state's restriction is constitutional, the Court in *N.Y. State Rifle & Pistol Ass'n v. Bruen,* 597 U.S. 1, 142 S. Ct. 2111 (2022) explained that "the standard for applying the Second Amendment is as follows: When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm

regulation." 142 S. Ct. at 2129–30.

"[T]he Second Amendment guarantees a general right to public carry," meaning ordinary, law-abiding citizens may "'bear' arms in public for self-defense." *Bruen*, 142 S.Ct. at 2135. Accordingly, the "general right to public carry" cannot be restricted absent "*exceptional* circumstances." *Bruen*, 142 S. Ct. at 2156 (emphasis added). To determine whether a state's restriction is constitutional, the Court in *Bruen* explained that "the standard for applying the Second Amendment is as follows: When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." 142 S. Ct. at 2129–30. It is the State's burden to "affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id*. at 2127; *See also id.* at 2150 ("[W]e are not obliged to sift the historical materials for evidence to sustain New York's statute. That is respondents' burden."). If the State fails to meet its burden, then the State's restrictions must be enjoined.

## A. Plaintiffs' Conduct is Covered by the Second Amendment's Plain Text

If the plaintiff's proposed course of conduct falls within the Second Amendment's plain text, then "the Constitution presumptively protects that conduct." *Bruen*, 142 S. Ct. at 2126. The Supreme Court has defined all of the

5

Second Amendment's key terms. "The people" means "all Americans"; "Arms" includes "all instruments that constitute bearable arms"; and, most relevant here, to bear simply means to "carry." *District of Columbia v. Heller*, 554 U.S. 570, 580–82, 584 (2008). Here, Plaintiffs' are part of the people.  This cannot seriously be disputed.  All plaintiffs are qualified to own guns in Hawaii. Therefore, they have all passed Hawaii's rigorous criminal and mental health background checks for firearm ownership. "*Heller* explained that the words "the people" in the Second Amendment have been interpreted throughout the Constitution to "unambiguously refer[] to all members of the political community, not an unspecified subset." 554 U.S. at 580. Here, there cannot be any real question that Plaintiff is part of the people because he is the same type of law abiding citizen that was at issue in *Bruen.* Furthermore, Plaintiffs' proposed course of conduct is protected by the Second Amendment.  That is because they wish to bear arms for lawful self-defense just like the plaintiffs in *Bruen.*

The Supreme Court's binding determination of the text of the Second Amendment definitively resolves the question of whether Plaintiffs' proposed conduct is presumptively protected by the Second Amendment. Plaintiffs are Americans who seeks to carry bearable arms for self-defense. As in *Bruen*, these undisputed facts end the textual inquiry: "the plain text of the Second Amendment protects [Plaintiffs'] proposed course of conduct—carrying handguns publicly for

6

self-defense." 142 S. Ct. at 2134. A law that "restricts [the] ability to bear or keep [a] firearm … unquestionably implicates … Second Amendment rights." *United States v. Perez-Garcia*, 96 F.4th 1166, 1181 (9th Cir. 2024).[3] Accordingly, under *Bruen*'s unambiguous directions, "the burden falls on [the State] to show that [the nonresident ban] is consistent with this Nation's historical tradition of firearm regulation." *Id.* at 2135. The State "must identify a historical analogue that curtails the right to peaceably carry handguns openly for self-defense to a comparable degree, with a comparable severity, and with a comparable blanket enforcement." *Baird v. Bonta*, 81 F.4th 1036, 1047 (9th Cir. 2023).

The historical analogues the State points to must be "representative" of a robust long-established tradition that existed at the Founding. Historical "outlier" requirements of a few jurisdictions or of territorial governments are to be

---

[3] Plaintiffs are aware that the Ninth Circuit has said that "laws imposing conditions and qualifications on the commercial sale of arms" must "meaningfully constrain the right to keep and bear arms" to implicate the Second Amendment. *B&L Prods., Inc. v. Newsom*, 104 F.4th 108, 118-19 (9th Cir. 2024). Plaintiffs believe that the meaningfully constraint analysis is not applicable here because the nonresident ban deals with a restriction on carry and not a restriction on the commercial sale of arms. Even if it did apply, *Perez-Garcia* would control and require this Court to find that the plain text is implicated because the nonresident ban restricts carry. Even if *Perez-Garcia* did not control, assuredly a complete ban on Mr. Solinsky's, and similar HRA members', carry rights is more of meaningful constraint than California's "monthly metering of firearm purchases" which the Ninth Circuit found meaningfully constrains the right to purchase and possess firearms" and thus also fulfill the meaningfully constrain standard. *Nguyen v. Bonta*, 140 F.4th 1237, 1243 (9th Cir. 2025).

disregarded. *Bruen*, 142 S. Ct. at 2133, 2153, 2147 n.22 & 2156. This means regulations from only a handful of states or those that cover only a small portion of the population are not enough to demonstrate that modern regulations are consistent with the Second Amendment. *Id.* at 2155 (rejecting regulations applying to only 1% of the American population). *Bruen* also categorically rejected reliance on laws enacted in the Territories, including expressly "Arizona, Idaho, New Mexico, Oklahoma," holding that such laws "are most unlikely to reflect 'the origins and continuing significance of the Second Amendment' and we do not consider them 'instructive.'" *Bruen*, 142 S. Ct. at 2154 (quoting *Heller*, 554 U.S. at 614).

The historical analogues must be "relevantly similar," which is to say that they must burden ordinary, law-abiding citizens' right to carry for self-defense in a similar manner and for similar reasons. *Bruen*, 142 S. Ct. at 2132. *Bruen* held that the inquiry into whether an analogue is proper is controlled by two "metrics" of "how and why" any restriction was historically imposed during the Founding era. *Id.* at 2133. "[W]hether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified are '*central*' considerations when engaging in an analogical inquiry." *Id.* (emphasis in original). In attempting to "affirmatively prove" that its restrictions on public carry are consistent with the Nation's historical tradition, the State may refer to historical analogues at the Founding and prove those meet *Bruen*'s "how" and "why" standard.

8

142 S. Ct. at 2127, 2133.

## B. This Court Should Not Apply a Nuanced Approach

This Court should not apply a more nuanced approach. "The Supreme Court acknowledged that the historical analogues presented in that case and Heller were 'relatively simple to draw' but that 'other cases implicating unprecedented societal concerns or dramatic technological changes may require a more nuanced approach.' " *Nguyen v. Bonta*, 140 F.4th 1237, 1244 (quoting *Bruen*, 597 U.S. at 27). Here, firearm carry has existed by nonresidents since the Founding. Whatever modern problems the State "identifies as justification for its" nonresident ban "are perhaps different in degree from past problems, but they are not different in kind. Therefore, a nuanced approach is not warranted." *Nguyen v. Bonta*, 140 F.4th 1237, 1245.  However, even if a nuanced approach was taken, the State has no justification for its nonresident ban because ultimately any restriction must be tied to history and history is resoundingly clear here. There is no historical tradition denying nonresidents of a state the right to carry arms.  In fact, historically, travelers had added firearm rights protections.

## C. Travelers From Other States Were Historically Exempted from State and Local Restrictions on Carrying Firearms

Before 1900, carrying a firearm openly generally did not require a permit or any other permission from the government. Concealed carry, on the other hand,

was often restricted or banned entirely. Courts generally approved of this arrangement. *See, e.g., Nunn v. State*, 1 Ga. 243, 251 (1846).  And in the Nineteenth Century there were admittedly some restrictions on pistol carry. There was one frequent exception to both these types of laws. Travelers were typically given exemptions to carry.

This tradition began in the colonial era.[4] In 1686, the Province of East Jersey prohibited "privately" wearing various weapons but exempted "all strangers, travelling upon their lawful occasions thro' this Province, behaving themselves peaceably."[5]An 1813 Kentucky law[6] was perhaps the earliest post-founding example, prohibiting the concealed carry of certain weapons "unless when travelling on a journey." 1813 Ky. Acts 100, An Act to Prevent Persons in this Commonwealth from Wearing Concealed Arms, Except in Certain Cases, ch. 89, §

---

[4] Copies of all the statutes referenced below are attached to the complaint as exhibits.

[5] *See* Complaint Exhibit 50. An Act Against Wearing Swords, ch. 9, N.J. STAT. (W. Bradford 1881) (Law Passed 1686). Available at
https://firearmslaw.duke.edu/laws/the-grants-concessions-and-original-constitutions-of-the-province-of-new-jersey-page-289-290-image-293-294-1881-available-at-the-making-of-modern-law-primary-sources

[6] This was 22 years after the Second Amendment was ratified and was likely still in the lifetime of the Founders. James Madison, the primary drafter of the Second Amendment, didn't die until 1836.

1.[78] An 1820 Indiana law was similar, limiting its concealed carry ban by stating it "shall not be so construed as to affect travellers." 1819 Ind. Acts 39, An Act to Prohibit the Wearing of Concealed Weapons.[9] By the end of the Antebellum Era, at least three other states (Tennessee, Arkansas, and Alabama) had also banned concealed carry but provided express exceptions for travelers. *See* Complaint Exhibit 9--1821 Tenn. Pub. Acts 1516, An Act to Prevent the Wearing of Dangerous and Unlawful Weapons, ch. 13 ("[N]othing herein contained shall affect … any person that may be on a journey to any place out of his county or state.")[10]; *See* Complaint Exhibit 10-- REVISED STATUTES OF THE STATE OF ARKANSAS, ADOPTED AT THE OCTOBER SESSION OF THE GENERAL ASSEMBLY OF SAID STATE, A.D. 1837, at 280 (1838) (1837 law applying to

---

[7] *See* Complaint Exhibit 51. Available at https://firearmslaw.duke.edu/laws/1813-ky-acts-100-an-act-to-prevent-persons-in-this-commonwealth-from-wearing-concealed-arms-except-in-certain-cases-ch-89-c2a7-1

[8] That law would soon be held unconstitutional under Kentucky's state constitution's bearing arms provision, but not because of the traveler exception. Rather, the state court ruled the restriction on concealed carry was unconstitutional in its entirety. "[I]n principle, there is no difference between a law prohibiting the wearing concealed arms, and a law forbidding the wearing such as are exposed; the former be unconstitutional, the latter must be so likewise." *Bliss v. Commonwealth*, 12 Ky. 90, 92 (1822).

[9] *See* Complaint Exhibit 23. https://firearmslaw.duke.edu/laws/1819-ind-acts-39-an-act-to-prohibit-the-wearing-of-concealed-weapons

[10] Available at https://firearmslaw.duke.edu/laws/robert-looney-caruthers-a-compilation-of-the-statutes-of-tennessee-of-a-general-and-permanent-nature-from-the-commencement-of-the-government-to-the-present-time-with-references-to-judicial-decisio

every person "unless upon a journey")[11]; *See* Complaint Exhibit 11--1841 Ala. Laws 149 (prohibiting concealed carry "unless such person shall … be travelling, or setting out on a journey").[12]  This tradition continued well after the Civil War. An 1867 Nevada law barred concealed carry for everyone who was not a "peace officer or traveler." *See* Complaint Exhibit 12. 1867 Nev. Stat. 66.[13] And a 1864 California law did the same. *See* Complaint Exhibit 13.[14] Traveler's exceptions also applied to the rare jurisdictions that implemented more comprehensive carry bans that were not limited only to concealed carry. In 1871, Texas instituted a fine for anyone caught "carry[ing] on or about his person, saddle, or in his saddle-bags, any pistol, dirk, dagger, slung-shot, sword-cane, spear, brass-knuckles, bowie-knife, or any other kind of knife manufactured or sold for purposes of offense or defense," providing, however, that "[t]he preceding article shall not apply … to persons

---

[11] Available at https://firearmslaw.duke.edu/laws/revised-statutes-of-the-state-of-arkansas-adopted-at-the-october-session-of-the-general-assembly-of-said-state-a-d-1837-in-the-year-of-our-independence-the-sixty-second-and-of-the-state-of-second

[12] Available at https://firearmslaw.duke.edu/laws/1841-ala-acts-148-49-of-miscellaneous-offences-ch-7-c2a7-4

[13] Available at https://firearmslaw.duke.edu/laws/an-act-to-prohibit-carrying-of-concealed-weapons-ch-30-1-2-1867-nev-stat-special-sess-joseph-e-eckley

[14] The Statutes of California Passed at the Fourteenth Session of the Legislature, 1863: Begun on Monday, the Fifth Day of January, and Ended on Monday, the Twenty-Seventh Day of April (Sacramento, CA: Benj. P. Avery, 1863), 748. Chapter 485—An Act to Prohibit the Carrying of Concealed Weapons, §§ 1–2. Approved April 27, 1863.available at https://firearmslaw.duke.edu/laws/an-act-to-prohibit-the-carrying-of-concealed-weapons-ch-485-1-2-1863-cal-stat-748-748-benj-p-avery

12

traveling." *See* Complaint Exhibit 14--The Revised Statutes of Texas, 4243

(1879).[15]    Similarly, in the 1880s, the Arizona Territory banned the carry

"pistol[e]" "within any settlement, town, village or city within this Territory" but

exempted "traveling." *See* 15 Complaint Exhibit 1883 Ariz. Sess. Laws 21–22.[16] In

1887, the New Mexico Territory banned all carry of deadly weapons except that

"[p]ersons traveling may carry arms for their own protection while actually

prosecuting their journey and may pass through settlements on their road without

disarming." *See* Complaint Exhibit 16.[17] Alabama had a law which prohibited the

carry of concealed weapons including firearm with an exemption for those

"traveling, or setting out on a journey." *See* Complaint Exhibit 21.[18] The State of

---

[15] Available at https://firearmslaw.duke.edu/laws/george-washington-paschal-a-digest-of-the-laws-of-texas-containing-laws-in-force-and-the-repealed-laws-on-which-rights-rest-carefully-annotated-page-1322-1324-image-292-294-vol-2-1873-availa

[16] https://firearmslaw.duke.edu/laws/act-of-mar-18-1889-1889-ariz-sess-laws-16-17

[17] *See* 1887 Acts of the Legislative Assembly, of the Territory of New Mexico, Twenty-Seventh Session: Convened at the Capitol, at the City of Santa Fe, on Monday, the 27th Day of December, 1886, and Adjourned on Thursday, the 24th Day of February, 1887 (Las Vegas, NM: J. A. Carruth, 1887), 55–58. Chapter 30—An Act to Prohibit the Unlawful Carrying and Use of Deadly Weapons, §§ 1–15. Approved February 18, 1887. Available at https://firearmslaw.duke.edu/laws/an-act-to-prohibit-the-unlawful-carrying-and-use-of-deadly-weapons-feb-18-1887-reprinted-in-acts-of-the-legislative-assembly-of-the-territory-of-new-mexico-twenty-seventh-session-55-58-1887 original text available at https://firearmslaw.duke.edu/assets/1887,-nm,-an-act-to-prohibit-the-unlawful-carrying-and-use-of-deadly-weapons,-ch.-30,--115,-1887-n.m.-territory-laws-(j.-a.-carruth).pdf

[18] Wade Keyes, The Code of Alabama, 1876 : with References to the Decisions of

Missouri had a ban on the concealed carry of danger or deadly weapons but had an

express exemption for "persons moving or traveling peaceably through this state."

*See* Complaint Exhibit 19.[19] Similarly, Mississippi law stated  "Any person, not

being threatened with, or having good and sufficient reason to apprehend an attack,

or travelling (not being a tramp) or setting out on a journey, or a peace officer, or

deputy in discharge of his duties, who carries concealed, in whole or in part, any

bowie knife, pistol, brass or metallic knuckles, slung-shot, or other deadly weapon

of like kind or description, shall be deemed guilty of a misdemeanor." *See* An Act

to Prevent the Carrying of Concealed Weapons, and for Other Purposes, ch. 46, §§

1–7, 1878 Miss. Laws 175, 175–76 (Power & Barksdale). *See* Complaint Exhibit

17.[20] Similarly, Tennessee had a law which was in force in 1878 which made it a

---

the Supreme Court of the State upon the Construction of the Statutes; and in Which
the General and Permanent Acts of the Session of 1876-7 have been Incorporated
Page 882, Image 898 (1877) The Making of Modern Law: Primary Sources.
available at https://firearmslaw.duke.edu/laws/wade-keyes-the-code-of-alabama-1876-with-references-to-the-decisions-of-the-supreme-court-of-the-state-upon-the-construction-of-the-statutes-and-in-which-the-general-and-permanent-acts-of-the-ses

[19] *See* MO. REV. STAT., ch. 24, art. 2, §§ 1274-1278 (Carter & Regan 1879).
https://firearmslaw.duke.edu/laws/mo-rev-stat-ch-24-art-2-1274-1278-carter-regan-1879

[20] Available at https://firearmslaw.duke.edu/laws/an-act-to-prevent-the-carrying-of-concealed-weapons-and-for-other-purposes-ch-46-1-7-1878-miss-laws-175-175-76-power-barksdale original text available at
https://firearmslaw.duke.edu/assets/1878,-ms,-an-act-to-prevent-the-carrying-of-concealed-weapons,-and-for-other-purposes,-ch.-46,--17,-1878-miss.-laws-175,-17576-(power-&-barksdale).pdf

crime loan a minor a pistol but had an exemption for travelers. *See* Complaint

Exhibit 20.[21] "This section makes it a misdemeanor to sell, give, or loan a minor a

pistol, or other dangerous weapon, except a gun for hunting, or weapon for defense

in traveling." *State v. Callicutt*, 69 Tenn. 714, 714 (1878). And Oklahoma had a

law which prohibited carrying long arms but had exemptions including "while

travelling or removing from one place to another." *See* Complaint Exhibit [22] In

1899, Wyoming prohibited every person "not being a traveler" from carrying

concealed pistols and other deadly weapons.[23]

---

[21] Seymour Dwight Thompson, A Compilation of the Statute Laws of the State of
Tennessee, of a General and Permanent Nature, Compiled on the Basis of the Code
of Tennessee, With Notes and References, Including Acts of Session of 1870-'71
Page 125, Image 794 (Vol. 2, 1873) available at The Making of Modern Law:
Primary Sources. https://firearmslaw.duke.edu/laws/seymour-dwight-thompson-a-
compilation-of-the-statute-laws-of-the-state-of-tennessee-of-a-general-and-
permanent-nature-compiled-on-the-basis-of-the-code-of-tennessee-with-notes-and-
references-incl-2

[22] *See* Concealed Weapons, ch. 25, art. 47, §§ 1–10, 1890 Okla. Territory Sess.
Laws 495, 495–96 (State Capital Printing Co. 1891) (Law Passed 1890). Available
at https://firearmslaw.duke.edu/laws/leander-g-pitman-the-statutes-of-oklahoma-
1890-from-the-laws-passed-by-the-first-legislative-assembly-of-the-territory-page-
496-image-512-guthrie-1891-available-at-the-making-of-modern-law-pr

[23] *See* Complaint Exhibit 22. Josiah A. Van Orsdel, Attorney General, Revised
Statutes of Wyoming, in Force December 1, 1899 Including the Magna Charta,
Declaration of Independence, Articles of Confederation, Organic Act of Territory
of Wyoming, Act of Admission of the State of Wyoming, Constitution of the
United States and of Wyoming, and the Rules of the Supreme Court Page 1253,
Image 1253 (1899) available at The Making of Modern Law: Primary Sources.
https://firearmslaw.duke.edu/laws/josiah-a-van-orsdel-attorney-general-revised-
statutes-of-wyoming-in-force-december-1-1899-including-the-magna-charta-
declaration-of-independence-articles-of-confederation-organic-act-of-territ-2

Besides state and territorial laws, many local governments implemented traveler's exceptions too.  *See* Complaint Exhibit 27--Fred L. Button, ed., General Municipal Ordinances of the City of Oakland, California (Oakland, CA; Enquirer, 1895), p. 218, sec. 1, citing An Ordinance to Prohibit the Carrying of Concealed Weapons, No. 1141 ("It shall be unlawful for any person in the City of Oakland, not being a public officer or a traveler actually engaged in making a journey, to wear or carry concealed about his person without a permit, as hereinafter provided, any pistol.")[24]; *See also* Complaint Exhibit 28--Ordinance no. 84, Charter and Ordinances of the City of Sacramento, Prohibiting the Carrying of Concealed Deadly Weapons (1876)[25] ("It shall be unlawful for any person, not being a public officer or traveler, or not having a permit from the Police Commissioners of the City of Sacramento, to wear or carry, concealed, any pistol, dirk, or other dangerous or deadly weapon.").  Los Angeles similarly banned all carry of certain "dangerous and deadly" weapons in 1878, unless carried by "persons actually traveling." *See* Complaint Exhibit 29. Revised Charter and Compiled Ordinances

---

[24] Available at https://firearmslaw.duke.edu/laws/fred-l-button-ed-general-municipal-ordinances-of-the-city-of-oakland-california-oakland-ca-enquirer-1895-p-218-sec-1-an-ordinance-to-prohibit-the-carrying-of-concealed-weapons-no-1141

[25] Available at https://firearmslaw.duke.edu/laws/prohibiting-the-carrying-of-concealed-deadly-weapons-ordinance-no-84-charter-and-ordinances-of-the-city-of-sacramento-1876 original text available at https://firearmslaw.duke.edu/wp-content/uploads/2023/05/1876-Sacramento-CA-Prohibiting-the-Carrying-of-Concealed-Deadly-Weapons-Ordinance-no.-84.pdf

and Resolutions of the City of Los Angeles 83 (Wm. M. Caswell ed., 1878).[26]

Fresno had a similar law. "Any person excepting peace officers and travelers, who

shall carry concealed upon his person any pistol or firearm, slungshot, dirk or

bowie-knife, or other deadly weapon, without a written permission (revocable at

any time) from the president of the board of trustees, is guilty of a misdemeanor."

*See* Exhibit 31.[27]  Marysville had a similar ordinance. "It shall be unlawful for any

person, not being a public officer or traveler, or not having a written permit from

the Marshal of the city of Marysville, to wear or carry concealed, or otherwise,

within the limits of the city of Marysville, any pistol, dirk, or other dangerous or

deadly weapon." *See* Exhibit 32-- An Ordinance to Prohibit the Carrying of

Concealed Deadly Weapons." Marysville Daily Democrat, February 7, 1889, p. 4.

Volume 9, Number 85. (Marysville, CA).[28]  Similarly, in 1888 the town of Lompoc

---

[26] Available at https://firearmslaw.duke.edu/laws/ordinance-no-8-los-angeles-daily-herald-apr-12-1889-at-7-los-angeles-california original text available at https://firearmslaw.duke.edu/wp-content/uploads/2023/09/1889-Los-Angeles-Herald-April-12-Ordinance-No.-8-%C2%A7%C2%A7-1-2.pdf

[27] L. W. Moultrie, Charter and Ordinances of the City of Fresno Page 30, Image 28 (1896) available at The Making of Modern Law: Primary Sources Available at https://firearmslaw.duke.edu/laws/l-w-moultrie-charter-and-ordinances-of-the-city-of-fresno-page-30-image-28-1896-available-at-the-making-of-modern-law-primary-sources . Fresno had a nearly identical law passed in 1885 as well. *See* "Ordinance No. 6" The Fresno Weekly Republican, November 7, 1885, p. 3. Volume 10, Number 9. Available at https://firearmslaw.duke.edu/wp-content/uploads/2023/08/1885-The-Fresno-Republican-1.pdf

[28] Available at https://firearmslaw.duke.edu/laws/an-ordinance-to-prohibit-the-carrying-of-concealed-deadly-weapons-marysville-daily-democrat-feb-7-1889-at-4 and the original text is available at https://firearmslaw.duke.edu/wp-

had an ordinance that banned concealed pistol carry. "It shall be unlawful for any person not being a public officer or traveler, or not having a written permit from the President of the Board of Trustees of the Town of Lompoc, to wear or carry concealed, within the corporate limits of the Town of Lompoc, any pistol. *See* Exhibit 33--Ordinance No. 10: An Ordinance Prohibiting the Carrying of Concealed Deadly Weapons, and Fixing the Penalty Therefor." The Lompoc Record, August 21, 1888, p. 2. Number 23; Volume 14.[29] San Diego had a similar ordinance. "It shall be unlawful for any person not being a peace officer or traveler, not having a permit from the President of the Board of Trustees of said city to wear or carry concealed about his person, within the limits of said city, any pistol…" *See* Exhibit 34.[30] Modesto had a similar ordinance. It shall be unlawful for any person not being a public officer or traveler, not having a written permit from the President of the Board of Trustees to wear or carry concealed about his person

---

content/uploads/2023/08/1889-Marysville-Daily-Democrat.pdf

[29] https://firearmslaw.duke.edu/laws/an-ordinance-prohibiting-the-carrying-of-concealed-deadly-weapons-and-fixing-the-penalty-therefor-no-10-the-lompoc-record-aug-25-1888-at-2 original text available at https://firearmslaw.duke.edu/wp-content/uploads/2023/08/1888-The-Lompoc-Record-Sat-Aug-25-1888.pdf

[30] City of San Diego, Digital Archives, Ordinance Number 19—An Ordinance for the Prevention of Offenses Against the Peace, Good Order and Health of the City of San Diego, §§ 2, 3, 39, & 41. Ordinances 1 - 50 (June 14, 1886 - January 24, 1887) in Ordinance Files 1850 - 1894, found at https://www.sandiego.gov/digitalarchives/historicalocd/ordinancefiles-1850-1894 also available at https://firearmslaw.duke.edu/laws/ordinance-no-19-2-3-39-41-board-of-trustees-of-the-city-of-san-diego-1886-san-diego-california

within the corporate limits of the City of Modesto any pistol." *See* Exhibit 35.[31]

San Francisco had a similar law. "It shall be unlawful for any person, not being a

public officer or traveler, or not having a permit from the Police Commissioners of

this city and county, to wear or carry concealed, in this city and county, any pistol,

dirk or other dangerous or deadly weapon." *See* Exhibit 36.[32] Eureka had a similar

law. *See* Exhibit 37.[33] More examples exist but must be omitted due to space

---

[31] Ordinance no. 15—An Ordinance to Prohibit the Discharge of Fire Arms and the Carrying of Deadly or Concealed Weapons within the Corporate Limits of the City of Modesto, §§ 1-5. Modesto City Council Ordinances Passed from 1884 to 1899 (#1 - #185). Introduced September 19, 1884; Passed September 16, 1884; Published in the Modesto Herald October 2, 1884. Available at https://www.modestogov.com/ArchiveCenter/ViewFile/Item/3958 and https://firearmslaw.duke.edu/laws/ordinance-no-15-1-5-board-of-trustees-of-the-city-of-modesto-1884-modesto-california

[32]General Orders of the Board of Supervisors Providing Regulations for the Government of the City And County of San Francisco: Also, Ordinances of Park Commissioners (San Francisco: P.J. Thomas, 1884), 8. General Order no. 1,603— Relating to the Police Department, § 22—Prohibiting the Carrying of Concealed Deadly Weapons. Approved September 17, 1880. Available at https://firearmslaw.duke.edu/laws/prohibiting-the-carrying-of-concealed-deadly-weapons-c2a7-22-of-general-order-no-1603-relating-to-the-police-department-general-orders-of-the-board-of-supervisors-providing-regulations-f original text available at https://firearmslaw.duke.edu/wp-content/uploads/2023/05/1880-CA-General-Order-no.-1603—Relating-to-the-Police-Department-§-22—Prohibiting-the-Carrying-of-Concealed-Deadly-Weapons.pdf

[33] "It shall be unlawful for any person not being a public officer, or traveler, or not having a permit from the Mayor of this city, to wear or carry concealed, within the corporate limits of this city, any pistol, dirk, or any other dangerous or deadly weapon." Available at https://firearmslaw.duke.edu/laws/ordinance-no-55-prohibiting-the-carrying-of-concealed-weapons-c2a7c2a7-1-4-in-charter-and-revised-ordinances-of-the-city-of-eureka-1878 original text available at https://firearmslaw.duke.edu/wp-content/uploads/2023/05/1878-Eureka-CA-Charter-and-Revised-Ordinances-of-the-City-of-Eureka-Ordinance-No.-55-§§-1-

limitations.[34]

Here, robust national history and tradition speak with a uniform voice. Plaintiffs have a " 'general right to publicly carry arms for self-defense' outside the home which, during an individual's daily life, can include crossing state lines." *Higbie v. James*, 795 F. Supp. 3d 307, 342-43 (N.D.N.Y. 2025). Hawaii cannot "present[] any reason why Plaintiff[]' constitutional right to keep and bear arms should stop at the State line." *Id.* Mr. Solinsky, and non-resident HRA members, have "demonstrated that the text of the Second Amendment likely applies to the first of its arguments, that non-residents have the right, like California residents, to apply to lawfully carry firearms for self-defense while in public." *Cal. Rifle & Pistol Ass'n v. L.A. Cty. Sheriff's Dep't*, 745 F. Supp. 3d 1037, 1064 (C.D. Cal. 2024).  Therefore Hawaii "bears the burden of showing whether [Hawaii's] residency requirements for a CCW license is "consistent with the Nation's historical tradition of firearm regulation." *Id* (quoting *United States v. Rahimi,* 144 S. Ct. 1889, 1891 (2024)). In the California nonresident litigation, California was unable to point to "any similar laws before either the Founding or Reconstruction." *Id* at1066. That is because as far as Plaintiffs can tell there are none. In fact, in *Higbie* "Defendant James [the State of New York] admit[ed] that "[s]tate licensing

---

4.pdf
[34] *See* Complaint ¶¶ 50-132.

laws such as the one Plaintiffs are challenging did not emerge until the early 20th Century." *Higbie v. James*, 795 F. Supp. 3d 307, 338 (N.D.N.Y. 2025) And whatever Twentieth Century laws Hawaii might muster are far too late in time. *See Bruen*, 597 U.S. at 66 n.28 ("We will not address any of the 20th-century historical evidence brought to bear by respondents [because] the 20th-century evidence presented by respondents . . . does not provide insight into the meaning of the Second Amendment when it contradicts earlier evidence."). "In this case, there is a lack of historical tradition to support the notion that states can exclude out-of-state applicants." *Higbie v. James*, 795 F. Supp. 3d 307, 340 (N.D.N.Y. 2025)

"Opening the application process to nonresidents does not limit [Hawaii's] ability to regulate who receives a CCW license based on other measured parameters. Nonresidents are simply afforded the same chance guaranteed to residents to exercise their Second Amendment rights." *Hoffman v. Bonta*, 789 F. Supp. 3d 995, 1003 (S.D. Cal. 2025). "The provisions barring nonresidents from applying for CCW licenses violate the Constitution." *Id at* 1004. Plaintiffs are highly likely to succeed on the merits of their claim.

## V. <u>Plaintiffs will suffer irreparable harm</u>

Here, Plaintiffs suffer irreparable harm every moment their CCW applications go unprocessed. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury." *Melendres v. Arpaio*, 695 F.3d 990,

1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)); 11A

Charles Alan Wright et al., Federal Practice and Procedure § 2948.1 (2d ed. 1995)

("When an alleged deprivation of a constitutional right is involved, most courts hold

that no further showing of irreparable injury is necessary."). The Ninth Circuit has

imported the First Amendment "irreparable-if-only-for-a-minute" rule to other rights

and, in doing so, has held deprivation of those rights is irreparable harm per se.

*Monterey Mech. Co. v. Wilson*, 125 F.3d 702, 715 (9th Cir. 1997). "This analysis

does not change where the constitutional violation at issue is a Second

Amendment violation because the right to peaceably bear arms to defend oneself is

not "a second-class right, subject to an entirely different body of rules than the

other Bill of Rights guarantees."" *Baird v. Bonta*, 81 F.4th 1036, 1046 (9th Cir.

2023). (quoting *McDonald v. City of Chi.*, 561 U.S. 742, 780 (2010). *See also Ezell v.

City of Chi.,* 651 F.3d 684. 700 (7th Cir. 2011) (a deprivation of the right to arms is

"irreparable and having no adequate remedy at law.").

### VI.      Granting the PI is in the Public Interest and Serves Equity

The last two preliminary injunction elements merge when the government is the

defendant. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014)

(citation omitted). When challenging government action that affects the exercise of

constitutional rights, "[t]he public interest . . . tip[s] sharply in favor of enjoining the"

law. *Klein v. City of San Clemente*, 584 F.3d 1196, 1208 (9th Cir. 2009). As the Ninth

22

Circuit has made clear, "all citizens have a stake in upholding the Constitution" and have "concerns [that] are implicated when a constitutional right has been violated." *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005). The State "cannot suffer harm from an injunction that merely ends an unlawful practice or reads a statute as required to avoid constitutional concerns." *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013); *See Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013) ("[I]t is clear that it would not be equitable . . . to allow the state . . . to violate the requirements of federal law." (citations omitted). "[W]e *presume* that a constitutional violation causes a preliminary injunction movant irreparable harm and that preventing a constitutional violation is in the public interest." *Baird v. Bonta*, 81 F.4th 1036, 1046 (9th Cir. 2023).

On the other hand, there would be no harm to the public by ending the ongoing violation of Plaintiffs' rights. Americans with CCW permits are an overwhelmingly law-abiding demographic, as three courts have recently confirmed. *See May v. Bonta*, 2023 WL 8946212, at *19 (C.D. Cal. Dec. 20, 2023) ("Simply put, CCW permit holders are not the gun wielders legislators should fear"); *Wolford v. Lopez*, 2023 WL 5043805, at *32 (D. Haw. Aug. 8, 2023) ("the vast majority of conceal carry permit holders are law-abiding"); and *Koons v. Platkin*, 2023 WL 3478604, at *108 (D.N.J. May 16, 2023) ("despite ample opportunity for an evidentiary hearing, the State has failed to offer any evidence that law-abiding responsible citizens who carry firearms in public for self-

defense are responsible for an increase in gun violence"). It is in the public interest to enjoin Hawaii's nonresident ban.

## VII.   Waiver of Bond is Proper and Appropriate Under These Circumstances

"Notwithstanding its seemingly mandatory language," stating that the movant must provide "security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained," "Rule 65(c) invests the district court with discretion as to the amount of security required, if any." *Weaver v. City of Montebello*, 370 F.Supp.3d 1130, 1139 (C.D. Cal. 2109) (quoting *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009)). The court may properly dispense with any such bond requirement when "the balance of ... equities weighs overwhelmingly in favor of the party seeking the injunction," *East Bay Sanctuary Covenant v. Trump*, 349 F.Supp.3d 838, 869 (N.D. Cal. 2018) (quoting *Elliott v. Kiesewetter*, 98 F.3d 47, 60 (3d Cir. 1996)), when "there is no realistic likelihood of harm to the defendant from enjoining his or her conduct," *Johnson* at 1086 (internal quotations omitted), and where the plaintiffs have a "likelihood of success on the merits," *People of the State of Cal. ex rel. Van De Kamp v. Tahoe Regency Planning Agency*, 766 F.2d 1319, 1326 (9th Cir. 1985). These factors are true here, thus rendering a waiver both proper and appropriate.

24

## VIII.    This Court Should Consolidate Pursuant to Rule 65(a)(2)

Rule 65(a)(2) of the Federal Rules of Civil Procedure state "[b]efore or after beginning the hearing on a motion for a preliminary injunction, the court may advance the trial on the merits and consolidate it with the hearing. This Court should do so here because "[g]iven the expedited and predominately legal nature of the questions presented by this litigation," the "evidence presented by the parties through the briefing and hearing on the motions for preliminary injunctions will be relevant to adjudicating the Plaintiffs' claims on the merits*." Donald J. Trump for President, Inc. v. Bullock*, No. CV 20-66-H-DLC, 2020 U.S. Dist. LEXIS 169794, at *2 (D. Mont. Sep. 16, 2020). Plaintiffs are currently suffering irreparable harm and would thus benefit from a consolidated hearing.

## IX.    Conclusion

A preliminary injunction should be issued enjoining H.R.S. §134-9(a)(5) both as applied to Plaintiffs and facially.

DATED:  Honolulu, Hawaii, <u>March 7, 2026</u>.

 Respectfully submitted,

<u>/s/ *Kevin O'Grady*</u>
Kevin Gerard O'Grady
Law Office of Kevin O'Grady, LLC
1164 Bishop Street, Suite 1605
Honolulu, Hawaii 96813
(808) 521-3367
Hawaii Bar No. 8817
Kevin@KevinOGradyLaw.Com


 <u>/s/ *Alan Beck*</u>
Alan Alexander Beck
Law Office of Alan Beck
2692 Harcourt Drive
San Diego, CA  92123
(619) 905-9105
Hawaii Bar No. 9145
Alan.alexander.beck@gmail.com


Counsel for Plaintiffs